UTICA MUTUAL INSURANCE COMPANY vs. EDWARD T.
FONTNEAU & others.[1]

No. 06-P-930.

Middlesex. March 15, 2007. - October 25, 2007.

Present: LENK, GREEN, & SIKORA, JJ.

*Insurance,* Homeowner's insurance, Insurer's obligation to defend. *Indemnity.*
*Words,* "In connection with."

The plaintiff insurance company had a duty to defend the defendant insured
against an allegation of negligence arising from a third party's injury suf-
fered on a parcel of land allegedly used in connection with the insured's
residence, for which the plaintiff had issued a homeowner's insurance
policy, where the third party's amended complaint set forth allegations that
were reasonably susceptible of an interpretation stating a claim covered by
the policy terms. [556-557]

The plaintiff insurance company, which issued a homeowner's policy to the
defendant insured for his residence, had a duty to indemnify the defendant
for personal injury damages awarded to a third party in connection with an
injury he suffered on an adjacent parcel, where the adjacent parcel was
used in connection with the insured residence, in that the defendant's stor-
age of antique automobiles on the adjacent parcel qualified as a residential
activity, the distance between the residence and the site of the accident was
short, and no unforeseeable surprise befell the insurer regarding the activ-
ity on the adjacent parcel. [557-560]

CIVIL ACTION commenced in the Superior Court Department on
June 17, 1999.

Motions for partial summary judgment were heard by *Patrick
F. Brady*, J., and the case was heard by *Margaret R. Hinkle*, J.

*James T. Scamby* for the plaintiff.

*J. Michael Conley* for Edward W. Burbank & another.

SIKORA, J. This appeal requires interpretation of a phrase com-
mon in homeowner's insurance policies. The question presented
is whether an insured party, Edward T. Fontneau, used an adjacent

[1]Edward W. Burbank and Regina Burbank.

parcel "in connection with" his insured residence so as to require the insurer, Utica Mutual Insurance Company (Utica Mutual), to defend and to indemnify him against claims of liability for personal injuries suffered by a third party on the adjacent parcel. By allowance of Fontneau's cross motion for partial summary judgment, a Superior Court judge ruled that Utica Mutual had a duty to defend. At the conclusion of a jury-waived trial, a second Superior Court judge ruled that the insurer had a duty to indemnify. We affirm the conforming final judgment.

1. *Background.* We summarize the facts from the trial judge's findings and the uncontradicted evidence in the record. On March 23, 1995, while in the course of his law enforcement duties, police Officer Edward W. Burbank sustained an injury on a dirt track at 380 Old Colony Road in Norton (380). The track led to the rear of the adjoining parcel, 378 Old Colony Road (378). At the time of the accident, Fontneau owned both parcels.

The 378 parcel consisted of approximately two acres and contained a two-family house rented by Fontneau to tenants. A driveway led from Old Colony Road to the house. Behind the house lay an upper backyard and a lower backyard. The lower backyard was a flat, clear area. A drop-off and a concrete retaining wall, ranging from four to eight feet in height, separated the lower area from the house and upper yard. They made the lower area inaccessible to vehicles from the front of 378.

The adjacent 380 parcel consisted of approximately eleven acres of land on which Fontneau had built a 7,200 square foot metal building. He used part of the building to store equipment and materials, and to house offices for his construction business. He leased the remainder of the building to commercial tenants. A driveway connected the metal building to Old Colony Road. The concrete retaining wall extended from 378 to the rear of the metal building on 380.

A fifteen to twenty foot wide dirt track connected the rear of 378 and the rear of 380. It passed behind the metal building on 380, ran behind and parallel to the concrete retaining wall, and extended to the lower backyard of 378. Although it was not necessary to use the dirt track to access any part of 378 from 380, it was the most convenient way to get from 380 to 378, and it provided the only vehicle access to the lower backyard of 378.

Fontneau's employees regularly operated construction equipment along the dirt track behind 380.

Fontneau collected classic and antique automobiles as a hobby. In the early 1990's, he brought four automobiles to the lower backyard behind the retaining wall on 378 by means of a tow truck along the dirt track from 380. He visited or inspected the cars on nights and weekends. He also stored some construction materials in this area.

On March 23, 1995, Fontneau learned that the children of the tenants at 378 had vandalized his antique cars. He arranged to meet Burbank that evening in front of 380. When Burbank arrived, no one was present. Knowing that the alleged vandalism involved cars stored "behind the building," he proceeded in the dark on foot behind the metal building. He walked down the dirt track and investigated the site of the antique cars at the lower backyard of 378. While coming back on the dirt track, Burbank walked into the extended stabilizer arm of a backhoe behind the metal building and was injured.

From 1989 until approximately 1994, Fontneau had maintained separate insurance policies on 378 and 380. In 1994 or 1995, he allowed the policy on 380 to lapse. The dwelling policy issued for 378 by Utica Mutual, in effect at the time of Burbank's injury, excludes coverage for "bodily injury" "arising out of a premises . . . owned by an insured . . . that is not an 'insured location.' " The policy defines the term "insured location" as "the 'residence premises' " or "any premises used by [the insured] *in connection with* [the residence premises]" (emphasis supplied). Fontneau had not altered the dirt track since he acquired the policy.

Burbank and his wife brought a personal injury action against Fontneau for negligent conduct on 380. Fontneau sought coverage from Utica Mutual. In June of 1999, Utica Mutual began this action for a declaration that its policy did not provide coverage for the Burbanks' claims. In October of 1999, the Burbanks amended their complaint in the negligence action to include an allegation that Fontneau owned and controlled 378, and that he regularly used the dirt track to access the lower backyard of 378 from 380.

2. *Prior proceedings.* By a memorandum of decision, the mo-

tion judge ruled that from the time of the amendment of the Burbanks' complaint, Utica Mutual had a duty to defend Fontneau because the amended complaint stated a claim that might reasonably fall within the coverage of the policy.

The case went to a jury-waived trial on the issue of indemnification. The parties stipulated that they were unable to locate any Massachusetts case law addressing the "used . . . in connection with" clause at issue. The trial judge analyzed case law from other jurisdictions and concluded that "for premises to be used 'in connection with' other premises, the insured must use the premises regularly and on an ongoing basis for some purpose logically related to his use of the [insured] premises," with "[t]he particular use of the premises in question [as] the determining factor." Upon her findings of fact, she ruled that Utica Mutual had breached its duty to indemnify Fontneau.

After the trial judge issued her ruling, we held in *Massachusetts Property Ins. Underwriting Assn.* v. *Wynn*, 60 Mass. App. Ct. 824, 830 (2004), that "the term 'insured location' is intended and appropriately understood to be limited to the residence and premises *integral to its use as a residence*" (emphasis added). Relying on the *Wynn* decision, Utica Mutual filed a motion for reconsideration and for relief from judgment. It argued that the word "integral" meant "essential to completeness," and that "[n]othing about the [dirt track] behind 380 was essential to the 'completeness' of 378 as a residence." The trial judge denied the motion. Utica Mutual presses the same argument on appeal.

3. *Discussion.* a. *The duty to defend.* With the same summary judgment record as the motion judge, the reviewing court examines the allowance de novo. See *Matthews* v. *Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 123 n.1 (1997). We assess the factual materials in the light most favorable to the nonmoving (losing) party, determine whether all material facts are established, and inquire whether the applicable law entitles the movant to judgment. *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991).

The motion judge correctly ruled that Utica Mutual had a duty to defend Fontneau against the allegation of negligence in the Burbanks' amended complaint of October 12, 1999. As he observed, the proper analysis compares the pertinent language

of the complaint and the text of the policy. The settled rule in Massachusetts and elsewhere is that, if the allegations of the complaint are reasonably susceptible of an interpretation stating a claim covered by the policy terms, the insurer must undertake a defense. See *Lusalon, Inc.* v. *Hartford Acc. & Indem. Co.*, 400 Mass. 767, 772 (1987); *Trustees of Tufts Univ.* v. *Commercial Union Ins. Co.*, 415 Mass. 844, 847 (1993); *Simplex Technologies, Inc.* v. *Liberty Mut. Ins. Co.*, 429 Mass. 196, 197-198 (1999); *Sterilite Corp.* v. *Continental Cas. Co.*, 17 Mass. App. Ct. 316, 318 (1983).[2] In *Simplex Technologies, Inc.* v. *Liberty Mut. Ins. Co.*, *supra* at 199, the court added that " 'the insurer's duty to defend its insured arises whenever the allegations in a complaint state a cause of action that gives rise to the possibility of recovery under the policy; there need not be a probability of recovery.' 7C J.A. Appleman, Insurance Law and Practice § 4683.01, at 67 (rev. ed. 1979)."

In the amended complaint, the Burbanks pleaded in clear and separately numbered paragraphs (1) that "[a]s owner and possessor of 378 Old Colony Road, Mr. Fontneau and others entering with his permission regularly used portions of 380 Old Colony Road, including [the dirt track] at the rear of the building at 380 Old Colony Road, to gain access to the rear of his property at 378 Old Colony Road, and the [dirt track] was otherwise used by Mr. Fontneau in connection with 378 Old Colony Road"; (2) that at the time of the accident Fontneau possessed and parked a backhoe in the rear of 380 on or adjacent to the dirt track leading to 378, and that the backhoe's stabilizer arms were dangerously extended outward; and (3) that this dangerous condition and the failure to warn Burbank as a foreseeable visitor walking on the dirt track behind 380 "in connection with" his investigation at the rear of 378 constituted negligence.

These allegations satisfied the standard of reasonable textual susceptibility and mere possibility of recovery so as to trigger the duty to defend.[3]

b. *The duty to indemnify.* Utica Mutual is invoking an exclu-

---

[2]See also *Continental Cas. Co.* v. *Gilbane Bldg. Co.*, 391 Mass. 143, 148-149 (1984); *Aetna Cas. & Sur. Co.* v. *Cotter*, 26 Mass. App. Ct. 56, 58 (1988), for application of the standard.

[3]Utica Mutual characterizes the Burbanks' amended complaint "as a belated

sion from coverage. The interpretation of an exclusionary clause "is a 'question of law for the trial judge, and then for the reviewing court.' " *Jefferson Ins. Co.* v. *Holyoke,* 23 Mass. App. Ct. 472, 475 (1987), quoting from *Cody* v. *Connecticut Gen. Life Ins. Co.,* 387 Mass. 142, 146 (1982). *Metropolitan Property & Cas. Ins. Co.* v. *Fitchburg Mut. Ins. Co.,* 58 Mass. App. Ct. 818, 821-822 (2003). It receives direct scrutiny. See *Kendall* v. *Selvaggio,* 413 Mass. 619, 621 (1992); *Boston Hous. Authy.* v. *Bridgewaters,* 69 Mass. App. Ct. 757, 762 (2007).

Several guidelines assist the interpretation and application of the phrase "any premises used by [the policy holder] in connection with" the insured location. If the insurer uses policy language permitting two rational interpretations, the court will adopt the one more favorable to the insured. See *Rezendes* v. *Prudential Ins. Co.,* 285 Mass. 505, 511 (1934); *Joseph E. Bennett Co.* v. *Fireman's Fund Ins. Co.,* 344 Mass. 99, 103-104 (1962); *Hakim* v. *Massachusetts Insurers' Insolvency Fund,* 424 Mass. 275, 281-282 (1997); *Bates* v. *John Hancock Mut. Life Ins. Co.,* 6 Mass. App. Ct. 823, 824 (1978). Courts construe any ambiguity in an exclusionary clause against the insurer. See *Vappi & Co.* v. *Aetna Cas. & Sur. Co.,* 348 Mass. 427, 431 (1965); *Hakim* v. *Massachusetts Insurers' Insolvency Fund, supra* at 282; *Middlesex Ins. Co.* v. *American Employers Ins. Co.* 9 Mass. App. Ct. 855, 856 (1980). Because Utica Mutual sought to enforce an exclusion from coverage and because it committed a breach of its contractual duty to defend, it carried the burden of proof of noncoverage. See *Polaroid Corp.* v. *Travelers Indem. Co.,* 414 Mass. 747, 764 (1993); *Liquor Liab. Joint Underwriting Assn.* v. *Hermitage Ins. Co.,* 419 Mass. 316, 323 (1995); *Metropolitan Property & Cas. Ins. Co.* v. *Fitchburg Mut. Ins. Co., supra* at 820.

In *Massachusetts Property Ins. Underwriting Assn.* v. *Wynn,* 60 Mass. App. Ct. at 829-830 & n.7, we confronted the ques-

---

attempt to recast the allegations" on "the eve of trial." However, the amended complaint was filed in October, 1999; and the motion judge's ruling was entered on February 21, 2002. Trial began on January 7, 2003. Utica Mutual had abundant time for preparation of a defense. Authority indicates that the insurer may become retroactively liable for the cost of defense by the plaintiff's changes of liability theory in later amendment of the pleadings or even by developments in proof at trial. See *Terrio* v. *McDonough,* 16 Mass. App. Ct. 163, 168-169 (1983).

tion whether a beach used regularly by the insured for recreation and located less than 500 feet from the insured residence qualified as an "insured location" under the policy definition of "[a]ny premises used . . . in connection with [the insured residential premises]."

We confined the scope of the "used . . . in connection with" clause to "the [insured] residence and premises integral to its use as a residence." *Id.* at 830. The beach was not integral to the use of the residence as a residence, no matter how regularly the insured used the beach for recreation. *Id.* at 829-830. A contrary reading of the phrase "used . . . in connection with" "would require knowledge by an insurer of not only the insured's property but also of neighboring property and the insured's hobbies and interests," *id.* at 830, and would "provide no discernible geographical limit to coverage." *Id.* at 829. We left open the question "whether a particular location, such as an offsite pathway or approach to the residence, is so integral to the use of the residence as to be an 'insured location.' " *Id.* at 830 n.9.

Several criteria appear in the *Wynn* analysis and recur in the decisions of other jurisdictions cited there.[4] To determine whether a site is covered by reason of its use in connection with the specifically insured residential premises, courts will examine (1) the character of the use as a residentially related activity; (2) the distance between the residence and the site; and (3) the resulting reasonable foreseeability of the risk of the connected activity on the site to the insurer. Under these criteria one would anticipate that common residential behavior close to home and foreseeable

---

[4]Without the benefit of any Massachusetts precedent at the time of trial in this case, the trial judge correctly applied decisions from other jurisdictions to reach her determination of coverage. See *Nationwide Mut. Ins. Co.* v. *Prevatte*, 108 N.C. App. 152, 156 (1992) (trail on adjacent property used "in connection with" insured parcel where insured had for years used trail for walking and riding and each walk or ride began and ended on insured's property); *Uguccioni* v. *United States Fid. & Guar. Co.*, 408 Pa. Super. 511, 513-514 (1991) (roadway in private residential development "available for use in achieving access to insured residence" used "in connection with" insured location); *Northern Security Ins. Co.* v. *Rossitto*, 171 Vt. 580, 581-582 (2000) (case remanded for factual determination as to location of accident; if accident occurred on right-of-way to insured's property, it would be used "in connection with" insured's property because "[r]ights-of-way are easements, legally recognized property interests, of which the owner is entitled to 'reasonable' use").

to the insurer will increase the probability of coverage of the site. The probability of coverage will decline as the activity becomes more unusual, more remote from the residence, and therefore less foreseeable to the insurer. As author of the policy terms, the insurer has inserted the concept of an insured separate site. These rational determinants of a covered location should not inflict unfair surprise or burdensome risk upon the insurer.

The determinants lead to a solution in this case. The storage of automobiles generally, and of antique automobiles particularly, in yards and garages qualifies as a residential activity. The policy did not exclude coverage for injuries generated by that activity. The dirt track from 380 provided the only vehicular access and the most convenient pedestrian access to the lower backyard of 378. Without the dirt track Fontneau could not have stored and cared for the antique automobiles there, unless he significantly altered the parcel to create vehicular access from the front of 378. The evidence at trial placed the accident at a spot only a short distance from the boundary line of 378.

No unforeseeable surprise befell Utica Mutual. Fontneau had insured 378 with Utica Mutual since 1989; he had stored the antique cars there since "the early 1990's"; Utica Mutual renewed his policy on May 18 of each year; the accident occurred on March 23, 1995. He owned both 378 and 380. No evidence arose at trial to indicate that Utica Mutual did not know of the activities at 378 and 380 or that it had not been able to learn of them by application or renewal questionnaires or by direct inspection.

4. *Conclusion.* By both proximity and usage the accident site was sufficiently connected to the residence premises to receive coverage as an insured location. Utica Mutual did not carry its burden of proof to the contrary.

*Judgment affirmed.*