07-5249-cv
*Arrowood Indem. Co. v. King*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2008

(Argued: May 22, 2009)                    (Questions Certified: May 18, 2010)

Docket No. 07-5249-cv(L)

_____

ARROWOOD INDEMNITY CO.,

*Plaintiff-Counter-Defendant-Cross-Defendant-Appellee*,

v.

PENDLETON KING, DAPHNE KING, and PENDLETON KING JR.,

*Defendants-Counterclaimants-Third-Party-Plaintiffs-Appellants,*

CONOR McENTEE,

*Defendant*,

NATIONAL SURETY CORPORATION,

*Third-Party-Defendant-Appellee,*

NEW ENGLAND BROKERAGE CORPORATION,

*Third-Party-Defendant-Cross-Claimant-Appellee.*

_____
_____

Before: KEARSE, LIVINGSTON, *Circuit Judges*, VITALIANO, *District Judge*.[1]

———————————————————————

Appeal from a judgment of the United States District Court for the District of Connecticut (Stefan R. Underhill, *Judge*), granting summary judgment in favor of insurance companies which, based on the location of the occurrence, among other reasons, had disclaimed any duty to defend or indemnify their policyholders in an action brought by a third party arising from an accident involving the policyholders' all-terrain vehicle.

Questions certified.

———————————————————————

RALPH W. JOHNSON III, Halloran & Sage LLP (Daniel P. Scapellati, Coleman C. Duncan III, on the brief), Hartford, Conn., *for Plaintiff-Counter-Defendant-Cross-Defendant-Appellee*.

JAMES T. HARGROVE, Goulston & Storrs (Peter F. Durning, on the brief), Boston, Mass. (Frederick P. Rickles, Gilbride, Tusa, Last & Spellane LLC, Greenwich, Conn., on the brief), *for Defendants-Counterclaimants-Third-Party-Plaintiffs-Appellants*.

ROBERT G. OLIVER, Mulvey, Oliver, Gould & Crotta (James D. Hine II, on the brief), New Haven, Conn., *for Third-Party-Defendant-Appellee*.

CHRISTOPHER B. WELDON, Keidel, Weldon & Cunningham, LLP, (Robert J. Grande, on the brief), Wilton, Conn., *for Third-Party-Defendant-Cross-Claimant-Appellee*.

———————————————————————

---

[1] The Honorable Eric N. Vitaliano, District Judge, United States District Court for the Eastern District of New York, sitting by designation.

VITALIANO, *District Judge*:

Defendants Pendleton King, Daphne King and Pendleton King Jr. ("Junior") (collectively, the "Kings") appeal from a declaratory judgment of the United States District Court for the District of Connecticut (Stefan R. Underhill, *Judge*) holding in favor of insurers that none of the three separate residence-related liability insurance policies owned by the Kings covered their alleged liability to a third party child who was seriously injured in an accident involving an all-terrain vehicle the Kings owned (the "ATV"). Central to the district court's determination was a finding that the accident had not occurred at an "insured location", as defined by the policies.

We conclude that this case requires us to resolve significant questions concerning the appropriate construction of the relevant policy language, involving interpretation of Connecticut insurance law and implicating public policy considerations for Connecticut. For these reasons and those that follow, we certify, pursuant to Conn. Gen. Stat. § 51-199b (2005) and 2d Cir. R. 27.2, several questions to the Supreme Court of Connecticut.

## BACKGROUND

The material facts are undisputed. The Kings' home, located in Deer Park, a private residential development in Greenwich, Connecticut, that is managed by an incorporated homeowners association, sits at the southeastern corner of the intersection of Deer Park Court and Midwood Road, both private roads within the Deer Park boundaries. On May 5, 2002, Junior and a neighbor, Conor McEntee ("Conor"), both then 14 years old, were playing outdoors with an ATV owned by Junior's parents. Junior was driving the vehicle while towing Conor,

3

who was standing on a skateboard and holding a rope tied to the back of the ATV. Conor was not wearing a helmet. As the teenagers traveled along Midwood Road, between Deer Park Court and a dead end, Conor fell and struck the pavement, which caused him to sustain a life-threatening head trauma. The accident occurred in front of 63 Midwood Road, approximately 50 to 75 feet north of the intersection where the Kings resided.

The Insurance Policies

Over a year after the ATV accident, the Kings received a letter dated August 5, 2003, from an attorney for Conor and his parents (the "McEntees") regarding Conor's injuries. Long before the accident's happening, through their insurance broker, New England Brokerage Corporation ("NEBC"), the Kings had purchased three liability policies that were in effect at the time of the accident: (1) a homeowner's policy issued by Royal Indemnity Company ("RIC") with a $500,000 per occurrence coverage limit; (2) an umbrella policy issued by Royal Insurance Company of America ("RICA") with a per occurrence limit of $5 million; and (3) an excess liability policy issued by National Surety Corporation ("National"), insuring up to $5 million more per occurrence.[2] Shortly after receiving it, the Kings forwarded the letter from the lawyer for the McEntees to NEBC. NEBC, in turn, notified RIC and RICA (collectively, "Royal"), as well as National, of the May 5, 2002, ATV accident.

After conducting an investigation, which included interviewing Pendleton King and

---

[2] On March 31, 2008, we granted plaintiffs-appellees' motion to amend the caption to reflect the substitution of Arrowood Indemnity Co. for RIC and RICA. For purposes of clarity and consistency with the district court record, this opinion will reference only the names of the predecessor entities.

4

Junior, reviewing the police report and examining the scene of the accident, Royal advised the Kings in writing, on November 24, 2003, that neither the homeowner's policy nor the umbrella policy provided coverage for Conor's claimed injuries. A few weeks later, on December 17, 2003, Royal filed a declaratory judgment action in the United States District Court for the District of Connecticut seeking an order that neither RIC nor RICA had a duty to defend or indemnify the Kings with respect to this accident. On April 27, 2004, the McEntees filed their by-then anticipated tort complaint in Connecticut Superior Court, naming all three Kings as defendants.

1. *The Homeowner's Policy*

At issue is a provision of the King's homeowner's policy which covers any person using a recreational vehicle "owned by an Insured and on an Insured [L]ocation." The policy defined an "Insured Location" to include: "[t]he residence premises"; "[t]he part of other premises, other structures and grounds used by you [the policyholders] as a residence and: (1) [w]hich is shown on your Declarations; or (2) [w]hich is acquired by you during the policy period for your use as a residence"; and finally, "any premises used by you in connection with" either of the foregoing. The declarations page of the policy listed "1 Deer Park Ct[.]" as the "residence premises."

The homeowner's policy generally excluded coverage for injuries arising out of any use associated with a motorized land conveyance vehicle and, specifically, for any vicarious liability arising out of the actions of a minor in connection with the use of such a conveyance, even if statutorily imposed. Elsewhere, however, the policy provided that this general exclusion did

5

"not apply to . . . [a] motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and . . . [o]wned by an Insured and on an Insured location."

As for claim notification, the policy stated, in relevant part, that "[i]n case of an accident or an occurrence, the Insured will . . . [g]ive written notice to us or our agent as soon as practical."

2. *The Umbrella Policy*

In general, the version of the umbrella policy that was in effect on May 5, 2002, provided the Kings coverage for personal injuries resulting from the use of "[r]ecreational motor vehicles" they owned, including when the vehicle was operated by Junior. The policy catch here, though, was that the coverage was not operative unless the recreational motor vehicle was covered by primary insurance (the homeowner's policy) and was "described as being covered in the declarations." The ATV being operated by Junior when Conor was injured was not described in the umbrella policy's declarations.[3] Like the homeowner's policy, the umbrella policy required the insured to provide notice of an accident or occurrence "as soon as is practical."

3. *The Excess Liability Policy*

Lastly, a $5 million excess liability policy issued by National "followed form" to the

_____

[3] As noted by the district court, there are multiple versions of the RICA policy and the parties dispute which specific version was in effect on the date of the accident. The differences between the two are immaterial for present purposes as the district court's rationale for finding no coverage applies regardless – both versions require the Kings to list recreational motor vehicles on the declarations page for coverage to apply, and neither one in fact lists the subject ATV.

6

RICA umbrella policy. As is typical, the excess policy required the Kings to list in the declarations the underlying insurance, that is, the policies of insurance that would be initially tapped to pay a covered loss, and then provided for the kick-in of the excess coverage, but only if the underlying insurers did not successfully disclaim coverage and their payments exhausted the full amounts of their respective coverage. If these conditions were satisfied, National was to pay on the excess loss, up to the policy limit of $5 million. On the schedule of underlying insurance, the Kings listed the RICA umbrella policy, but did not list their RIC homeowner's insurance policy.

Proceedings in the District Court

In the declaratory action, Royal sought to disclaim any duty to defend or indemnify the Kings for claims arising from the ATV accident under both the homeowner's and umbrella policies.[4] Substantively, Royal asserted that the homeowner's policy did not apply because Conor's injuries were not sustained on an "insured location" and that the umbrella policy did not apply because the ATV was not listed in the policy declarations; procedurally, it asserted that coverage under both was foreclosed, in any event, because the Kings had failed to comply with the insured's duty to provide notice of the accident to the insurer "as soon as practical." In answer, the Kings argued that the accident site, Midwood Road, was in fact an "insured location"

[4] On January 19, 2006, counsel for Royal advised the Kings that Royal would provide a defense to the Kings in the underlying state court action pursuant to a full reservation of rights. The Kings initially rejected the tender of defense coverage, taking issue with Royal's reservation of rights and timing, but ultimately accepted it to avoid any risk of waiver or estoppel of coverage claims. The posture of the appeal is unaffected by this development.

under the homeowner's policy because it was a private way owned by the Deer Park Association for the exclusive use and benefit of Deer Park residents, including themselves, and thus was "used" by them "in connection with" their "residence premises." They also interposed three counterclaims against Royal: breach of contract, breach of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a *et seq.*, and breach of the implied covenant of good faith and fair dealing. Additionally, the Kings filed a third-party complaint, advancing claims (a) against their excess insurer, National, for breach of contract and seeking a declaratory judgment mandating coverage, and (b) against their broker, NEBC, for breach of contract, negligence and breach of fiduciary duty.

In October 2004, the district court granted Royal's motion to dismiss the CUTPA counterclaim for failure to allege that Royal engaged in a general business practice in violation of the statute, Conn. Gen. Stat. § 38a-816(6), but with leave to replead, which the Kings did. In April 2005, the district court granted NEBC's motion to dismiss the third-party claims for breach of contract and breach of fiduciary duty on the grounds that NEBC had no contract with the Kings to breach and, with respect to the fiduciary claim, that the Kings had at best pled an action in professional negligence.

In August 2006, NEBC filed cross-claims against Royal for common-law indemnification, contractual indemnification and contribution based on allegations that, after NEBC first procured the Kings' umbrella policy in 1999, Royal acted negligently and in violation of Connecticut law in unilaterally reducing the policy's ATV coverage by limiting the

coverage to vehicles expressly listed in the declarations.

At the next round of the litigation, all parties filed summary judgment motions. In August 2006, RICA moved on its declaratory judgment action, contending that the umbrella policy expressly excluded coverage of recreational motor vehicles not described in the policy declarations, with a "me-too" from National against the Kings' third-party claims on the basis that the excess policy followed form to the umbrella policy. In November 2006, the Kings and RIC cross-moved in RIC's declaratory judgment action regarding the homeowner's policy. A month later, NEBC moved on its cross-claims against Royal for indemnification and contribution and, in the alternative, for judgment against the Kings on their third-party claim of negligence.

On September 28, 2007, the district court ruled against the Kings on all five summary judgment motions. The court "distilled" the parties' arguments into three broad queries, each of which it answered in the negative: "(1) Whether the Kings' homeowner's policy provides coverage with respect to McEntee's claims; (2) Whether the Kings' umbrella policy provides coverage with respect to McEntee's claims; and (3) Whether NEBC was negligent when it failed to procure an umbrella policy that followed form to the homeowner's policy." *Royal Indem. Co. v. King*, 512 F. Supp. 2d 117, 119 (D. Conn. 2007).

The cascade of negative answers to these queries, first and foremost, begins with the district court's holding that the RIC homeowner's policy did not cover any liability of the Kings to the McEntees because the ATV accident had not occurred on an "insured location." The ATV

9

accident undisputedly took place in front of 63 Midwood Road, which was plainly not part of the Kings' "residence premises" at One Deer Park Court. Nor, the court decided, did the location qualify as a premises used "in connection with" the residence premises. The court expressly recognized that the claims for negligent supervision and negligent entrustment arose from the elder Kings' conduct at the residence premises – where Junior's parents had, it was alleged, negligently entrusted the ATV to him – but found that fact irrelevant because it held that the coverage inquiry turned on the location of the accident rather than the location where the actual entrustment of the ATV had occurred.

The district court found that the umbrella policy did not apply because it expressly excluded coverage for all ATVs except those listed in the declarations, and the Kings had failed to list the ATV involved in the accident. Additionally, the district court found that RICA had acted in compliance with Connecticut law when it changed the umbrella policy to exclude unlisted ATVs, and, even if RICA had not, the Kings had not shown that the ATV accident would have been covered under the previous version of the umbrella policy. The district court also concluded that because the Kings' excess liability policy "follows form" to the umbrella policy, the Kings were not eligible for coverage under the excess policy. Lastly, given the finding that the primary homeowner's policy itself did not provide coverage for the accident, the court reasoned that the Kings suffered no harm from NEBC's failure to procure an umbrella policy that followed form. As a result, it granted summary judgment in favor of NEBC on the negligence claim against it.

10

As a matter of judicial housekeeping, the district court went on to note that certain claims remained pending among various parties but observed that "many, if not all, of those [outstanding] claims are either: (a) moot; (b) hinge upon an interpretation of the Kings' insurance policies expressly rejected herein; or (c) otherwise inconsistent with my ruling today." 512 F. Supp. 2d at 134. The court instructed the parties to report back as to the status of open matters. At an October 31, 2007 conference, the Kings argued that their CUTPA and bad faith counterclaims against Royal were still viable, and that they could pursue additional theories of negligence against NEBC premised on allegations other than the broker's failure to procure a follow-form umbrella policy. The district court disagreed; the Kings sought reconsideration.

The district court entered final judgment on January 8, 2008, declaring that Royal had no duty to defend or indemnify the Kings in connection with any claims arising out of the May 5, 2002, ATV accident and granting summary judgment to Royal on all of the Kings' counterclaims. The district court also granted summary judgment in favor of National on the outstanding counterclaims brought against it. NEBC's cross-claims against Royal for indemnification and contribution were dismissed as moot. Finally, the district court denied the Kings' motion for leave to amend their complaint to add new facts and legal theories to support their claims against NEBC and Royal, reasoning that permitting amendment after the merits of these claims had been rejected on summary judgment would be unfair and prejudicial. The Kings appeal from that final judgment.

11

**DISCUSSION**

1. *Negligent Entrustment Claim*

In the course of deciding whether the basic homeowner's insurance policy covered the ATV accident that injured Conor, the court below held that the coverage-triggering phrase "on an insured location" referred to the location where the accident occurred (outside 63 Midwood Road) and expressly rejected any notion that the phrase might refer to the locus of the alleged act of parental negligence itself – the entrustment of the ATV to Junior, which may have occurred immediately before the accident at the undisputedly insured home premises (One Deer Park Court). The Kings argue on appeal that the district court's analysis was insufficient. We find that Connecticut law is unsettled as to whether a negligent entrustment claim in this context should be deemed to arise where the subject vehicle was entrusted, where the vehicle was housed, or where the accident itself took place.

Although Royal acknowledges that no Connecticut appellate court has spoken on this specific point, it postulates that the Connecticut Supreme Court has decided related issues that show it would find in Royal's favor here; specifically, that "on an insured location", as used in the Kings' homeowner's policy, refers solely to the accident site. However, the case that Royal cites for this prediction, *Security Insurance Co. of Hartford v. Lumbermens Mutual Casualty Co.*, 264 Conn. 688, 697 n.12, 826 A. 2d 107, 114 n.12 (2003), addresses only an insurer's responsibility for injuries that occur within a policy period and focuses on the temporal aspect of an injury rather than its situs. We do not find those attributes to be analytically interchangeable.

12

The Kings rely heavily on a 2006 Connecticut Superior Court decision, also interpreting a Royal-issued homeowner's insurance policy, which found that the insured's liability there on a claim for negligent entrustment of her recreational motor vehicle survived a similar policy exclusion due to the location where the recreational vehicle (a go-cart) was garaged. *See Chen v. Celon*, No. CV020391304S, 2006 WL 3008410, at *4 (Conn. Super. Ct. Oct. 10, 2006). The policy at issue in *Chen*, like the policy at issue here, excluded injuries arising from use of motor vehicles from coverage, but contained a savings provision allowing coverage for "[a] motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration, and . . . owned by an 'insured' and on an 'insured location.'" *Id.* at *2. The undisputed facts were that the go-cart was unregistered and designed for recreational use off public roads, the insured had entrusted the go-cart to the 12-year-old plaintiff in the backyard of her home where the go-cart was garaged, and the subsequent accident causing injury to the plaintiff took place on the public road where the insured's home was situated. As here, the resolution of the dispute in *Chen* rested on the meaning of the term "on an insured location", and Royal unsuccessfully made the very same argument in that case that it now makes to this Court – namely, that the term refers only to the site of the bodily injury. *See id*. at *3. *Chen* found that the policy was ambiguous on this point and, construing the ambiguity against the insurer, determined that "on an insured location" referred to the physical location where the go-cart was garaged. The *Chen* court noted that Royal had the opportunity to define the term more narrowly when drafting the policy, but did not do so. *See id*. at *4.

13

Another Connecticut trial court, however, has found that a homeowner's insurance policy excluded coverage for all liability arising from an off-property ATV accident, regardless of whether the liability stemmed from a claim of negligent entrustment or any other theory of recovery, because of the location of the accident. *See Pister v. Nationwide Mut. Ins. Co.*, No. DBDCV064005239, 2007 WL 2200348, at *7 (Conn. Super. Ct. Apr. 13, 2007). In stark contrast to *Chen*, *Pister* attached no significance to the location where the vehicle was garaged. *See id.*; *see generally Allstate Ins. Co. v. Foster*, No. CV07074026117, 2008 WL 2313313, at *5 (Conn. Super. Ct. May 14, 2008) (noting, however, that decisional law interpreting motor vehicle exclusions in homeowner's insurance policies offers "less guidance when it comes to a claim of negligent entrustment or supervision").

In other jurisdictions, the prevailing view has deemed the site of the accident to be the proper reference point for analyzing whether an occurrence of negligent entrustment took place on an "insured location." *See, e.g.*, *Allstate Ins. Co. v. Shofner*, 573 So.2d 47, 49-50 (Fla. Dist. Ct. App. 1990) (explicitly rejecting argument that liability for negligent entrustment of a recreational vehicle was covered by homeowner's policy when the entrustment occurred on insured's residence premises but the accident occurred off-premises); *Buchmeier v. Prokott*, No. C6-98-183, 1998 WL 372784, at *2 (Minn. Ct. App. July 7, 1998) (same); *Iorio ex rel. Iorio v. Simone*, 340 N.J. Super. 19, 23-24, 773 A.2d 722, 725 (Super. Ct. App. Div. 2001) (interpreting same relevant policy language and finding that the motor vehicle exclusion applied to a claim for negligent entrustment of a go-cart involved in an accident on the street a block away from the

14

insured's house, although entrustment took place in insured's driveway, because "the carrier carefully excluded certain risks, particularly those arising from the insured's owned recreational vehicles on the public ways").

If the Connecticut Supreme Court were to endorse the approach stated in *Chen*, and all other policy conditions were satisfied, the Kings' RIC homeowner's insurance policy would certainly cover them for any liability arising from the negligent entrustment claim brought by the McEntees, as the subject ATV was garaged at the insured residence premises. Assuming that in this case, as in *Chen*, the entrustment took place where the vehicle was garaged, and all other policy conditions were satisified, Conor's accident would also be covered if the Connecticut Supreme Court took the position that the relevant location is the site of the allegedly negligent entrustment. If, on the other hand, the Connecticut Supreme Court were to endorse the majority view that a negligent entrustment claim arises where the accident occurred, then a subsidiary issue would be presented, whether the accident, which occurred on a private road in which the insureds had a property interest derivative of their ownership of the insured residence premises, took place on an "insured location" as defined by another provision of the policy. *See* discussion in section 2, *infra.* Given the absence of controlling Connecticut case law interpreting provisions of insurance policies issued under Connecticut law as they relate to these pivotal issues and the considerable expertise of the Connecticut Supreme Court in the field of insurance law, we believe the prudent course is to invite guidance by Connecticut's high court on these open questions.

## 2. *Whether Accident Occurred on an Insured Location*

There is also no binding or dispositive Connecticut precedent to resolve the question of whether a homeowner's policy which defines "insured location" as including "premises" used "in connection with" a residence premises, but does not define "premises", covers an occurrence on a portion of a private road in the insured's homeowner's association that, unlike other portions of the same road, the insured does not regularly use.

a. "Premises" Used "in Connection with" a Residence Premises

The initial step in determining whether where the injury-producing negligence occurred in this case – the site of the ATV accident on Midwood Road, outside number 63 – was covered as a premises used in connection with a residence premises is determining whether a "roadway" can constitute a "premises" at all.  The word "premises", as used in the realm of real property law, is generally defined by Black's Law Dictionary as "[a] house or a building, along with its grounds." *Black's Law Dictionary* 1219 (8th ed. 2004).  Other definitions include: "property that is conveyed by bequest or deed"; "a specified piece or tract of land with the structures on it"; and "a building, buildings, or part of a building covered by or within the stated terms of a policy (as of fire insurance)." *Webster's Third New International Dictionary Unabridged* 1789 (1976).  Thus, one possible view is that the term "premises" cannot describe the accident site, as Midwood Road proper is not a building, nor the grounds of a building.

However, no Connecticut court has ruled whether a road (public or private) should be considered a "premises" within the meaning of an insurance contract.  Nor have Connecticut

courts dealt with the follow-up question of whether such a situs can satisfy the "used in connection with a residence premises" standard. Several other jurisdictions, on the other hand, have dealt with similar facts and policy language. This collection of decisional law demonstrates a range of analytical approaches roughly summarized as follows: repeated use; integral use; legal interest or ownership; foreseeable use; and actual use (which the court below appears to have chosen in the absence of controlling Connecticut precedent). We discuss these standards here insofar as they may be instructive. The Connecticut Supreme Court, of course, may choose to adopt any one of them, or blaze a different path altogether.

(1) Repeated Use

One approach in deciding whether an accident site other than a residence premises was an insured location under a homeowner's policy is to look for repeated use of the site by the insured. *See, e.g., Allstate Ins. Co. v. Drumheller*, 185 F. App'x 152, 158 (3d Cir. 2006) (non-precedential) ("[W]e do not believe that the precise physical relationship of [the residence premises to the accident site] is the crucial inquiry. . . . We think that the Pennsylvania Supreme Court would follow [the] holding that 'in connection with' means the repeated use of the ATV emanating from and returning to the insured's residence."); *Farmers New Century Ins. Co. v. Angerson*, No. 4:04-cv-2608, 2008 WL 238622, at *14 (M.D. Pa. Jan. 22, 2008) (ATV accident site, a field half a mile away from residence premises, was an insured location used "in connection with the residence premises" since there was "frequent use of the area in which the accident occurred"); *Nationwide Mut. Ins. Co. v. Prevatte*, 108 N.C. App. 152, 156, 423 S.E.2d

90, 92 (1992) (ATV accident on a trail leading from insured's property and ending on a neighbor's property covered because the trail was used regularly by the insured for several years to ride ATVs and for walking, and thus was used "in connection with" insured's residence premises).

But, even if adopted conceptually, subsidiary questions here too can produce conflicting coverage scenarios. Most broadly, if repeated use by the Kings of some part of Midwood Road were to suffice, the homeowner's policy would cover the accident injuring Conor. Yet coverage may not exist if the "repeated use" inquiry is geographically or functionally limited either to the specific portion of Midwood Road where the ATV accident occurred, or if focused specifically on the Kings' use of their ATV on the roadway (as opposed to their use of other motor vehicles or nonvehicular usage). The overall geography is not disputed. Deer Park Court, the street where the Kings live, runs in an east-west direction and dead-ends at its eastern extremity. The western end of Deer Park Court forms a "T" intersection with Midwood Road. Midwood Road runs in a north-south direction and dead-ends at its northern end. The southern end of Midwood Road forms a "T" intersection with Deer Park Meadow Road, which leads to the Deer Park development's gate and the public road. As the record reflects, this road configuration limited the regular automobile use of Midwood Road by the Kings to its southern portion, that is, the stretch leading to and from the housing development's connection point with the public road. The Kings do not allege, and the record does not indicate, that they repeatedly (or ever) drove any vehicle on the northern portion of Midwood Road, where the ATV accident occurred. There

18

is also no basis to find that any of the Kings ever used the subject ATV on Midwood Road at all prior to the May 5, 2002, accident; nor that Midwood Road was ever used by them for other nonvehicular purposes. If the "repeated use" definition is to be adopted, guidance on the pertinence of these subsidary points is also requested.

(2) Integral Use

An alternate approach is to examine the necessity of the "use" at issue, as was adopted in *Massachusetts Property Insurance Underwriting Ass'n v. Wynn*, 60 Mass. App. Ct. 824, 806 N.E.2d 447 (App. Ct. 2004). In that case, James Spina and Charles Wynn were driving ATVs on a beach close to Spina's home when the vehicles collided, injuring Wynn. Spina's homeowner's insurance policy, like the Kings' policy, covered both his "residence premises" and premises used "in connection with" the residence premises. Further, Spina's ATV was garaged at the insured residence premises. In construing the policy, the Massachusetts court found that, although Spina frequently operated his ATV on the beach, "[t]he definition [of 'insured location'] is not meant to encompass adjacent, nonowned land on which an ATV might be used any more than it is intended to include parks or recreational facilities in proximity to the residence that the insured may enjoy and use regularly." 60 Mass. App. Ct. at 829-30, 806 N.E.2d at 451. In rejecting the regular/repeated use test, the *Wynn* court opined that "[i]t is not reasonable that the meaning of the language 'used in connection with [the residence],' and hence the ambit of the 'insured location,' should vary depending on the fortuity of an insured's regular use of a field, trail, or recreational area, public or private, in the neighborhood of his residence",

19

because "[s]uch a construction would require knowledge by an insurer of not only the insured's property but also of neighboring property and the insured's hobbies and interests." 60 Mass. App. Ct. at 830, 806 N.E.2d at 451-52. *Wynn* ultimately concluded that "the term 'insured location' is intended and appropriately understood to be limited to the residence *and premises integral to its use as a residence*", though it explicitly did not reach the question of whether "an offsite pathway or approach to [a] residence" can be "integral" to the use of the residence. 60 Mass. App. Ct. at 830 & n.9, 806 N.E.2d at 452 & n.9 (emphasis added).

Similarly, in *Illinois Farmers Insurance Co. v. Coppa*, 494 N.W.2d 503 (Minn. Ct. App. 1993), a Minnesota appellate court found no coverage of an ATV accident that occurred in an adjacent, nonowned hayfield where the insured's ATV might have been used, concluding that "[i]t is not reasonable to expect that every field or pathway in the neighborhood leading to the insureds' residence is property 'used in connection with' the residence", and affirming the lower court's finding that the homeowner's policy excluded coverage. *Id.* at 506. However, *Coppa* notably distinguished the uninsured hayfield from "approaches or easements of ingress to or egress from the property." *Id.*

Should the Connecticut Supreme Court choose to follow the "integral use" approach, the outcome of this appeal again would implicate subsidiary considerations. To the extent that Midwood Road in general is considered to be the relevant location, a court would presumably find the use of such premises to be integral to the use of the Kings' residence premises, as the Kings must use Midwood Road in order to reach the public highway. Under a more restrictive

20

view, in which the relevant location is defined as the northern portion of Midwood Road, directly outside number 63 (the actual site of injury), coverage would likely not exist because that portion of Midwood Road provides no ingress or egress to One Deer Park Court, and thus is not "integral" to the Kings' use of their residence premises. Correlatively, support for that more limited construction may be found in the warranty deed to One Deer Park Court, which expressly grants the Kings "the right to use in common with others . . . for all purposes of travel, *the private roads leading from the premises to and from the public highway insofar as the same may be necessary or convenient in passing to and from the premises*." (A 01209) (emphasis added)).

(3) Property Ownership and Legal Right to Use

That their warranty deed granted the Kings a limited easement within the gated Deer Park development would be of paramount significance if the Connecticut Supreme Court were to adopt the rule of decision announced in *Uguccioni v. U.S. Fidelity & Guaranty Co.*, 408 Pa. Super. 511, 597 A.2d 149 (1991), which held that an ATV accident that occurred on a private roadway within the insured's private housing development was covered under the insured's homeowner's policy. The *Uguccioni* court observed that "[t]hese streets, it would seem, are private property used by the insureds in connection with their insured residence. As such, the street on which [the ATV accident occurred] was an 'insured location.'" 408 Pa. Super. at 513, 597 A.2d at 150. *Uguccioni* construed the policy term "insured location" as "broad enough to include roads in a private development *which are available for use in achieving access to the insured residence*." 408 Pa. Super. at 514, 597 A.2d at 150 (emphasis added); *see also Coppa*,

21

494 N.W.2d at 506 (distinguishing "approaches or easements of ingress to or egress from the property" as covered by homeowner's policy, as opposed to an adjacent public field where ATV accident occurred).

At the outermost limit of this approach lies *Northern Security Insurance Co. v. Rossitto*, 171 Vt. 580, 583, 762 A.2d 861, 865 (2000). There, the Vermont Supreme Court considered an exception to an ATV exclusion in a homeowner's policy, and found that the policy term "insured location" unambiguously "encompasses [the insured's] right-of-way." Id.

Again, then, even if the "legal right" approach is adopted, its application requires a further determination of whether merely showing the existence of a property right in the accident situs is sufficient to secure policy coverage as an "insured location, " or whether the "legal right" must be further conditioned on it being a right for purposes only of assuring access to the residence premises – any other interest being irrelevant. *See* discussion of "integral use" approach, *infra.*

(4) Foreseeable Use

Notwithstanding that it would not guarantee their success on any remand, the Kings urge the Court to adopt an approach described in *Utica Mutual Insurance Co. v. Fontneau*, 70 Mass. App. Ct. 553, 875 N.E.2d 508 (2007), which observed, as a general matter, that "[t]o determine whether a site is covered by reason of its use in connection with the specifically insured residential premises, courts will examine (1) the character of the use as a residentially related activity; (2) the distance between the residence and the site; and (3) the resulting reasonable

22

foreseeability of the risk of the connected activity on the site to the insurer." 70 Mass. App. Ct. at 559, 875 N.E.2d at 514.

There is a dearth of Connecticut authority lending support to a *Fontneau*-style approach. The Kings, nevertheless, maintain that *Fontneau* supports coverage of Junior's ATV accident because it occurred as a result of his operation of the ATV on Midwood Road (which, by its nature as the development's private road, was "residentially related" by definition), only 20 yards away from the border of the their residence premises. The proximity and private nature of the roadway used as of right by the Kings, taken together, they argue, made the risk of the accident occurring where it occurred reasonably foreseeable to Royal. Royal counters that, in *Fontneau*, the insured and his employees regularly used the premises on which that ATV accident occurred, whereas the Kings cannot say they did. Nonetheless, this approach too can meander to coverage of Conor's injuries if Connecticut were to adopt it in determining the meaning of "premises used in connection with" the residence premises.

(5) Actual Use

The district court held that "actual use" of premises was a prerequisite to finding use of a piece of property to be "in connection with" a residence premises and explicitly rejected an interpretation of the term based on the insured's legal interest in or ownership of the off-residential location where the accident happened. *See* 512 F. Supp. 2d at 127 ("The legal right to use property may (or may not) be probative, but it is certainly not dispositive of whether parties actually use a piece of property 'in connection with' their residence premises."). The district

23

court reasoned that, with the exception of *Uguccioni*, courts considering the issue have required a showing of "actual use".

More basically, however, there is no Connecticut authority for the "actual use" approach taken by the district court here – it is an entirely open question whether there is any "actual use" standard at all in this context under Connecticut law, and even if there is, the bar for a showing of "actual use" may be lower than the bar set by the district court in this case. For purposes of the "actual use" inquiry, the court restricted its definition of the accident location to the northern portion of Midwood Road, despite acknowledging that "Midwood Road is not 'officially' divided into north and south." 512 F. Supp. 2d at 125 n.7. As the Kings uncontestably did not use the northern portion of Midwood Road for ingress and egress and had not alleged any other regular or repeated use of that specific area, the court concluded that the Kings had failed the "actual use" test. Yet, if the court had defined the accident location to be Midwood Road as a whole, as the Kings argue the court should have done, the Kings would have successfully shown "actual use" because they did regularly use the southern portion of that very same road for ingress and egress. And obviously, the northern portion of Midwood Road *had* been "actually used," in the literal sense, by Junior at least on the day of the ATV accident. (Implicitly, though not expressly, the court determined that this one-time use did not rise to the level of "actual use".) Consequently, in the absence of Connecticut precedent to guide us, we defer to the Connecticut Supreme Court to evaluate whether the district court's "actual use" analysis is supported by state law and, if not, to find that either a reformulation of it or one of the other

24

approaches discussed above or, indeed, some other definitional structure should be used to construe this provision of a homeowner's policy regulated by Connecticut law.

b. Significance of Public / Private Nature of Road

Closer scrutiny is required of several arguments offered by the Kings to demonstrate that Midwood Road is an "insured location" under their homeowner's insurance policy. First, they assert that Midwood Road is actually part of their "residence premises", on the logic that because it is a private road within the homeowners association of which they are members, they can claim a real property ownership interest in it. Alternatively, they contend that the private nature of Midwood Road brings it into one or both of the other categories of "insured location" described in their policy – "grounds used by [the insured] as a residence" and/or "any premises used by [the insured] in connection with [the residence premises or the part of other premises, other structures and grounds used as a residence]."

The first of the alternative grounds is easily dispatched. As the declarations page of the Kings' homeowner's policy specifically lists "1 Deer Park Ct[.]" as the residence premises and makes no mention of Midwood Road, it is sufficiently clear that Midwood Road was not in fact part of the Kings' residence premises. Nor have the Kings presented any evidence to indicate that they ever used any portion of Midwood Road "as a residence." However, we find that Connecticut law is unsettled regarding whether Midwood Road, because it is a private road, should be deemed a premises used "in connection with" the Kings' residence premises.

The Kings claim that because they are residents of Deer Park and voting members of its

25

homeowners association, they exert some control over Midwood Road and the other private roads within the development. Thus, they say, Midwood Road should be deemed a premises used by them "in connection with" their home. To further their argument, the Kings point to *Uguccioni,* 408 Pa. Super. at 513, 597 A.2d at 150 (finding that streets in a private residential development were "private property used by the insureds in connection with their insured residence", and, for that reason, an ATV accident on such a private road was covered under that provision of the homeowner's policy).

These arguments did not fly below. The district court rejected *Uguccioni* as "an outlier that has been expressly, if not impliedly, overturned by subsequent decisions." 512 F. Supp. 2d at 126. To be sure, courts in other jurisdictions have equated such private roads with public roads or, at a minimum, have not found any distinction apposite in considering the issue of coverage under a homeowner's liability policy. *See, e.g., Shelter Mut. Ins. Co. v. Davis*, No. 05-0456, 2006 WL 929239 (Iowa Ct. App. Apr. 12, 2006) (holding that homeowner's policy excluded coverage because ATV accident on private roadway in homeowners association occurred away from the insured premises). Indeed, *Davis* rejected the very same argument now made by the Kings – that the ATV accident was covered because the insureds were members of the homeowners association which owned and maintained the private road where the accident took place – since the insureds did not individually own the private road that, for all relevant purposes, was the functional equivalent of a public road. *See id.*

Another case, *Federal Kemper Insurance Co. v. Derr*, 386 Pa. Super. 382, 563 A.2d 118

26

(1989), found that an insurance policy with a similar definition of "insured location" did not cover an ATV accident that occurred on a similarly owned and maintained private road. Like the Kings, the insureds in *Derr* belonged to the homeowners association that owned the road, paid fees for the road's maintenance and repair and had an easement over it to the extent used for egress and ingress. The *Derr* court found that the road was not an "insured location" because it was public insofar as it was dedicated for use as a roadway by all association members, and the insureds could claim no true ownership over it. Specifically, while giving some credit to the argument that the Derrs' easement constituted a property interest, the court affirmed the trial court's finding that "all ninety lot owners are not individually responsible for insuring the easement, especially since a real estate corporation exists, which assumed the responsibility for maintenance of the road." 386 Pa. Super. at 388-89, 563 A.2d at 121-22. *Derr* explained further that "[t]he road in this instance was a private road as to the plan but not as to any individual . . . [and was] dedicated to the public use of all property owners, not subject to individual control by any of them. . . . Whether by deed or implication, this road is a public road as far as the plan is concerned, and may not be considered private property, part of the premises, or vacant property within the clear intent of the policy." 386 Pa. Super. at 389, 563 A.2d at 122. Although *Derr* does not specifically address the concept of use "in connection with" residence premises in an insurance policy's definition of an "insured location", it does offer the view that "private" ownership of Midwood Road may be irrelevant in determining whether the road is a covered location by virtue of being within one or another definition of "premises" set forth in the policy.

27

Accordingly, the significance of the public/private nature of a road in determining whether a road could be considered an "insured location" remains an open question under Connecticut law, and given the uncertainty and dearth of Connecticut case law regarding this potentially dispositive issue, we respectfully ask the Connecticut Supreme Court to consider and address it.

3. *To Give Notice "as Soon as Practical"*

Under Connecticut law, "absent waiver, an unexcused, unreasonable delay [by an insured] in notification [of a covered occurrence] constitutes a failure of condition that entirely discharges an insurance carrier from any further liability on its insurance contract." *Aetna Cas. & Sur. Co. v. Murphy*, 206 Conn. 409, 412, 538 A.2d 219, 220 (1988). However, a policyholder who fails to give timely notice of an insurable loss does not forfeit his coverage if he can prove that his delay did not prejudice his insurer. *See* 206 Conn. at 418, 538 A.2d at 223; *Taricani v. Nationwide Mut. Ins. Co.*, 77 Conn. App. 139, 140, 822 A.2d 341, 341 (2003). Absent a showing of "material prejudice", the insurance company has a continuing duty to provide coverage even if the literal terms of the notice provision are not met. *See Murphy*, 206 Conn. at 418, 538 A.2d at 223. Thus, Connecticut requires two conditions to be satisfied before an insurer's duties can be discharged pursuant to the "notice" provision of a policy: (1) an unexcused, unreasonable delay in notification by the insured; and (2) resulting material prejudice to the insurer. The burden of establishing timely notice or lack of prejudice to the insurer rests with the insured. *See Nat'l Publ'g Co. v. Hartford Fire Ins. Co.*, 287 Conn. 664, 675, 949 A.2d

28

1203, 1211 (2008); *Murphy*, 206 Conn. at 417-19, 538 A.2d at 223-24.

In determining whether a delay in notification is unreasonable and, thereby, untimely, a court must remain cognizant that an insured's "'duty to give notice does not arise unless and until facts develop which would suggest to a person of ordinary and reasonable prudence that liability may have been incurred, and is complied with if notice is given within a reasonable time after the situation so assumes an aspect suggestive of a possible claim for damages.'" *United Techs. Corp. v. Am. Home Assurance Co.*, 989 F. Supp. 128, 138 (D. Conn. 1997) (quoting *Silver v. Indem. Ins. Co. of N. Am.*, 137 Conn. 525, 528, 79 A.2d 355, 357 (1951)). The purpose of the requirement for prompt notice is to give the insurer a full opportunity to investigate the claim. *See Taricani,* 77 Conn. App. at 149, 822 A.2d at 346.

Not surprisingly, the duty to notify "does not attach in the case of a trivial accident where there is no reasonable ground for believing at the time that it involves any injury insured against." *Silver*, 137 Conn. at 530, 79 A.2d at 358 (internal quotation marks omitted). While "what appears at the time to be a relatively trivial accident may later eventuate in a serious injury which affords the basis for a substantial claim [,][t]hat this is so does not establish . . . that there was an obligation upon the assured to give notice at the time the accident occurred." *Id.* Apparent injury resulting from the accident is only one of the factors considered in determining whether the insured should have recognized that a claim would likely be made. *See Baker v. Metro. Cas. Ins. Co. of N.Y.*, 171 A. 7, 8 (Conn. 1934). As a result, provisions in Connecticut insurance policies specifying immediate notice or prompt notice have been construed as

29

requiring that notice be given within a reasonable time under the circumstances of the case. *Id.*; *see also Silver*, 137 Conn. at 528, 79 A.2d at 357.

With respect to "notice", the Kings' homeowner's policy states in relevant part: "In case of an accident or occurrence, the insured will perform the following duties that apply . . . a. Give written notice to us or our agent as soon as practical, which sets forth: (1) The identity of the policy and Insured; (2) Reasonably available information on the time, place and circumstances of the accident or occurrence; and (3) Names and addresses of any claimants and witnesses; b. Promptly forward to us every notice, demand, summons or other process relating to the accident or occurrence . . . . No action can be brought against us unless there has been compliance with the policy provisions."

Of course, there is no dispute that the Kings eventually gave notice to their insurers of the ATV accident. What is contested is whether it came "as soon as practical." The Kings contend that they notified Royal through their broker at NEBC as soon as the situation assumed "an aspect suggestive of a possible claim for damages," *United Techs.*, 989 F. Supp. at 138 (quoting *Silver,* 137 Conn. at 528, 79 A.2d at 357). The Kings rely on social interactions with the McEntees after the accident, claiming that Conor and his mother came to visit the Kings at their residence as guests, and did not give any indication whatsoever during the time after the accident that a lawsuit was forthcoming. Conor's own arguable recklessness in riding without a safety helmet on a skateboard attached behind a moving ATV could have only given added impulse to the comfort from suit the Kings claim to have found in such social intercourse. Within a matter

30

of days after receiving the letter from the McEntees' counsel indicating an intent to sue the Kings for damages arising from the accident, social intercourse notwithstanding, the Kings notified NEBC, which notified Royal. We find that it is unclear under Connecticut law whether the Kings' reliance on social interaction is enough to create a material issue of fact as to whether, prior to their receipt of the letter from the McEntees' counsel, the situation would have "suggest[ed] to a person of ordinary and reasonable prudence that liability may have been incurred." *Id.*

As to the prejudice prong of the "notice" analysis, Royal submitted an affidavit from its regional claims manager stating that, because of the delay, Royal was unable to inspect the ATV, hindering its ability to gather evidence regarding any potential product defect or failure to warn claims. (A 01835). The Kings essentially rely on a contemporaneous police record of the accident which stated that "[n]o obvious defects [of the ATV] were noted", (A 01221), and submit that the ATV had been sold and resold in commerce without post-accident repair. (A 02159-60.) Since the insured bears the burden of establishing lack of prejudice to the insurer under Connecticut law, it is unclear whether the Kings' submission and the police record create a genuine dispute regarding the lack of prejudice to Royal, assuming that "unreasonable delay" has been otherwise established. There is some authority that, in Connecticut, an insurer's inability to investigate facts that might reduce its liability constitutes material prejudice. *See Hartford Ins. Co. v. Colonia Ins. Co.*, 58 Conn. App. 39, 44, 750 A.2d 1158, 1161 (2000) (affirming the trial court's finding of material prejudice where the "complete failure to notify

31

deprived the defendant of its opportunity to investigate the possibility that the damage was caused by the negligence of another . . . [and] the opportunity to pursue a compromise or settlement"). However, especially given scant Connecticut precedent providing contours to determine whether social interactions suggesting a claim will not be pursued can reasonably excuse delay in giving notice, guidance is needed to assess whether a genuine dispute of material fact exists as to notice. Since the notice issue implicates important policy considerations, which we believe are likely to recur, in what has been "paradigmatically a state field," there is "greater cause for this court to stay its hand", *Parrot v. Guardian Life Ins. Co. of Am.*, 338 F.3d 140, 144-45 (2d Cir. 2003) (internal quotation marks omitted), until such guidance is obtained.

Thus, we respectfully ask the Connecticut Supreme Court to address this question regarding fact circumstances that can be appropriately considered in determining whether, as here, there has been compliance with the duty to notify an insurer of an accident for which coverage is claimed.

## CERTIFICATION

Resolution of this action brought in diversity is entirely dependent on the construction and application of Connecticut insurance law. We are empowered *nostra sponte* to certify a question of state law to the highest court of the state whose law applies. 2d Cir. R. 27.2; *see Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 51 (2d Cir. 1992). Reciprocally, Connecticut statutory law specifically and expressly countenances the certification of a question of state law by a federal court directly to the Connecticut Supreme Court "if the answer may be

32

determinative of an issue in pending litigation in the certifying court and if there is no controlling [Connecticut] appellate decision, constitutional provision or statute." Conn. Gen. Stat. § 51-199b(d).

As set forth above, we have found no Connecticut appellate precedent directly addressing certain significant questions of Connecticut law lying at the heart of this case. Certification regarding an unsettled area of state law is "[i]n keeping with our preference that states define the meaning of their own laws in the first instance." *City of N.Y. v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 457 (2d Cir. 2008) (*rev'd on other grounds, Hemi Group, LLC v. City of N.Y., N.Y.*, 130 S. Ct. 983 (2010)) (internal quotation marks omitted) (alteration in original). The case for certification to the Connecticut Supreme Court is especially compelling when the uncertainty pertains to an insurance dispute, given the "established preeminence" of that court in the field of insurance law. *Israel v. State Farm Mut. Auto. Ins. Co.*, 239 F.3d 127, 135 (2d Cir. 2000); *see Employers' Liab. Assurance Corp. v. Travelers Ins. Co.*, 411 F.2d 862, 863 (2d Cir. 1969) (noting that the Connecticut Supreme Court is "particularly expert" in insurance matters).

Accordingly, we respectfully request that the Supreme Court of Connecticut address the following questions:

(1) With respect to a claim for negligent entrustment under a liability policy that excludes coverage for "[a]rising out of . . . [t]he entrustment by an insured" "to any person," "of a motor vehicle" other than "[a] motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and . . . [o]wned by an insured

33

and on an insured location," is the insured location

    (a) the place where the entrustment of the vehicle took place, or

    (b) the place where the vehicle is garaged, or

    (c) the place where the accident occurred?

(2) In the absence of a policy definition of "premises", should a private road located within a residential development owned by the insured's homeowners association be considered "premises used . . . in connection with a [residence] premises" under the terms of a homeowner's insurance policy if the portion of the road where the liability arose is not regularly used by the insured, although other portions of the road are so used?

(3) Under Connecticut law, where a liability insurance policy requires an insured to give notice of a covered claim "as soon as practical," do social interactions between the insured and the claimant making no reference to an accident claim justify a delay in giving notice of a potential claim to the insurer?

The linchpin connecting certified questions 1 and 2 and the judgment appealed from is the district court's determination that the occurrence did not happen on an "insured location". Since we believe that construction of this linchpin term by the Connecticut Supreme Court in the context of certified questions 1 and 2 would most probably be dispositive of the appeal, we ask that court to establish under Connecticut insurance law the proper parameters of this policy language.

34

In formulating the questions for certification as we have, we do not mean to limit the Connecticut Supreme Court's response. The certified questions may be expanded to cover any further pertinent questions of Connecticut law that the Supreme Court deems appropriate to answer in connection with these issues. The Connecticut Supreme Court's guidance is welcomed on any state law issues presented by this appeal. This panel retains jurisdiction to consider all issues once the Supreme Court has either provided us with its guidance or has declined certification.

Accordingly, it is hereby ORDERED that the Clerk of this Court transmit to the Clerk of the Connecticut Supreme Court a Certificate, as set forth below, together with a complete set of the briefs, appendix, and record filed by the parties in this Court. The parties are further ORDERED to bear equally any costs or fees imposed by the Connecticut Supreme Court.

**CERTIFICATE**

The foregoing is hereby certified to the Connecticut Supreme Court, pursuant to 2d Cir. R. 27.2 and Conn. Gen. Stat. § 51-199b, as ordered by the United States Court of Appeals for the Second Circuit.