39 A.3d 712 (2012)
304 Conn. 179
ARROWOOD INDEMNITY COMPANY
v.
Pendleton KING et al.
No. 18658.
Supreme Court of Connecticut.
Argued December 5, 2011.
Decided March 27, 2012.
*714 Daniel P. Scapellati, with whom were Coleman C. Duncan, and, on the brief, Ralph W. Johnson III, for the appellant (substitute plaintiff Arrowood Indemnity Company).
James T. Hargrove, with whom was Frederic P. Rickles, for the appellees (defendants).
Robert G. Oliver, with whom were James D. Hine II and Michael J. Pinto, and, on the brief, Francis J. Drumm III, *715 New Haven, for the appellee (third party defendant National Surety Corporation).
ROGERS, C.J., and NORCOTT, PALMER, ZARELLA, McLACHLAN, EVELEIGH and HARPER, Js.
HARPER, J.
This case, on certification from the United States Court of Appeals for the Second Circuit, presents questions regarding the proper construction of terms in a homeowners insurance contract under Connecticut law. The predecessor insurance companies to the plaintiff, Arrowood Indemnity Company, brought a declaratory judgment action in the United States District Court for the District of Connecticut claiming that they did not have a duty to defend or to indemnify the defendants, Pendleton King, Daphne King and their minor child, Pendleton King, Jr. (Pendleton, Jr.) (collectively, the Kings), for any liability arising out of injuries sustained by a third party while Pendleton, Jr., was driving his parents' all-terrain vehicle (ATV) on a private road in a private residential community where the Kings resided because, inter alia, the accident had not occurred "on an insured location" and the Kings' notice of a claim was untimely.[1] The District Court rendered summary judgment in favor of the plaintiff; see footnote 1 of this opinion; without reaching the issue of notice. Royal Indemnity Co. v. King, 512 F. Sup.2d 117 (D.Conn. 2007). The Kings then appealed to the Circuit Court of Appeals, which, sua sponte, certified the following three questions of unresolved state law to this court: "(1) With respect to a claim for negligent entrustment under a liability policy that excludes coverage for `[a]rising out of ... [t]he entrustment by an insured' `to any person,' `of a motor vehicle' other than `[a] motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and ... [o]wned by an insured and on an insured location,' is the insured location
"(a) the place where the entrustment of the vehicle took place, or
"(b) the place where the vehicle is garaged, or
"(c) the place where the accident occurred?
"(2) In the absence of a policy definition of `premises', should a private road located within a residential development owned by the insured's homeowners association be considered `premises used ... in connection with a [residence] premises' under the *716 terms of a homeowner's insurance policy if the portion of the road where the liability arose is not regularly used by the insured, although other portions of the road are so used?
"(3) Under Connecticut law, where a liability insurance policy requires an insured to give notice of a covered claim `as soon as practical,' do social interactions between the insured and the claimant making no reference to an accident claim justify a delay in giving notice of a potential claim to the insurer?" (Emphasis in original.) Arrowood Indemnity Co. v. King, 605 F.3d 62, 80 (2d Cir.2010). The Second Circuit noted that Connecticut trial courts had adopted conflicting approaches to the first certified question[2] and that it could find no Connecticut case law resolving the second and third certified questions.
Pursuant to General Statutes § 51-199b, we accepted the certification and conclude that: (1) the relevant location is the site of the accident; (2) such a private road does not fall under the coverage provision; and (3) social interaction making no reference to an accident does not justify delayed notice, but an insurer must prove prejudice to disclaim its obligation to provide coverage based upon untimely notice.
The record certified by the Second Circuit contains the following undisputed facts relevant to resolving these questions. The plaintiff provides homeowner's insurance that covers the Kings' residence. This residence is located in Deer Park, a private residential development in Greenwich that is managed by an incorporated homeowners association. Pursuant to a warranty deed, the Kings have a right to travel along the private roads leading from their premises to and from the public road. The residence is situated on Deer Park Court, which terminates at one end at Midwood Road. The northern portion of Midwood Road is a dead end; the southern portion of Midwood Road leads to the development's exit and a public roadway.
The present litigation arose out of an incident that occurred in 2002. Pendleton, Jr., then fourteen years old, was driving an ATV owned by his parents and using a nine foot rope attached to the ATV to tow his friend, Conor McEntee, on a skateboard. While the two boys were on the dead-end portion of Midwood Road north of the Kings' residence, McEntee let go of the tow rope and subsequently fell, suffering a severe head injury that resulted in hospitalization and a temporary coma. The accident occurred approximately fifty to seventy-five feet from the Kings' property. Following the accident, the King and McEntee families socialized, and the McEntees did not indicate that they intended to bring an action related to the accident. More than one year after the accident, however, a letter from an attorney representing the McEntees alerted the Kings that an action might be filed, at which point the Kings, through New England Brokerage Corporation; see footnote 1 of this opinion; notified the plaintiff of the potential claim. The present declaratory judgment action followed. Additional facts will be set forth as necessary.

*717 I
We begin by considering the first two certified questions, which require us to determine whether, in an action alleging liability on the basis of negligent entrustment, the ATV accident in this case is covered under the terms of the Kings' homeowner's insurance policy. Specifically, we must determine whether the accident falls within the scope of an exception to the policy's general exclusion of liability coverage for accidents involving motor vehicles.
The relevant provisions of the exclusions section of the policy provide that "1. Coverage... do[es] not apply to bodily injury or property damage ...
"f. Arising out of:
"(1) The ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an Insured;
"(2) The entrustment by an Insured of a motor vehicle or any other motorized land conveyance to any person. ...
"This exclusion does not apply to ...
"(2) A motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:
"(a) Not owned by an Insured; or
"(b) Owned by an Insured and on an Insured location. ..." (Emphasis added.) There is no dispute in this case that the ATV at issue qualifies as "[a] motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration" and that the Kings owned the ATV. To fall within the scope of coverage, therefore, the ATV also must have been "on an [i]nsured location. ..." The proper interpretation of this phrase is at the heart of the first two certified questions.
We note that, although the questions certified by the Second Circuit conceivably could be answered without reference to the specific contract out of which they arise, it is the practice of this court to analyze such questions with respect to the specific contract at issue, where such analysis can yield an appropriate answer. See Enviro Express, Inc. v. AIU Ins. Co., 279 Conn. 194, 199, 901 A.2d 666 (2006) (employing principles of contract interpretation to answer certified question posed in more general terms). In interpreting an insurance contract, "[t]he determinative question is the intent of the parties, that is, what coverage the ... [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. ... If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning. ... Under those circumstances, the policy is to be given effect according to its terms. ... When interpreting [an insurance policy], we must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result. ...
"In determining whether the terms of an insurance policy are clear and unambiguous, [a] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. ... Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. ... As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading. ... Under those *718 circumstances, any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy." (Internal quotation marks omitted.) Johnson v. Connecticut Ins. Guaranty Assn., 302 Conn. 639, 643, 31 A.3d 1004 (2011). Under this holistic approach, if the policy sufficiently specifies the general contours of coverage, such that it is readily apparent that a particular claim falls within the scope of coverage, we are bound to give effect to that clearly expressed intent even when a particular term is not susceptible to a definite meaning. With these principles in mind, we turn to the first two certified questions.

A
The first question concerns the point in time to which the phrase "on an [i]nsured location" refers. Specifically, in the context of a claim that an act of negligent entrustment ultimately led to an ATV accident, we must determine whether coverage depends on where the ATV was at the time of the accident or where it was at the time of entrustment. Or, alternately, we must decide, as the Superior Court determined in Chen v. Celon, Superior Court, judicial district of Fairfield, Docket No. CV-02-0391304-S, 2006 WL 3008410 (October 10, 2006) (42 Conn. L. Rptr. 147); see footnote 2 of this opinion; that the phrase refers to the place the ATV is regularly kept or garaged, such that an ATV garaged on an insured location is covered regardless of where the actual accident occurs. We conclude that the natural and ordinary meaning of the phrase "on an [i]nsured location" unambiguously refers to the location of the ATV at the time of the accident giving rise to the insurance claim.
Most basically, it is clear from the insurance contract that liability coverage may be invoked only at the point of an accident. The policy's personal liability provision covers claims and actions "brought against an Insured for damages because of bodily injury, personal injury or property damage caused by an occurrence to which this coverage applies. ..." The policy defines "[o]ccurrence," in turn, as "an accident ... which results, during the policy period, in: a. Bodily injury; b. Personal injury; or c. Property Damage." The personal liability provision thus plainly provides insurance against the consequences of certain accidents, and it is the ATV's location at the time of such an accident that therefore determines whether coverage applies.[3]
This plain reading of the phrase "on an [i]nsured location," moreover, is necessary to give coherent meaning to the policy's ATV exception. The applicable exception *719 to the motor vehicle exclusion from coverage for "[a] motorized land conveyance... [o]wned by an Insured and on an Insured location" may be invoked only if two conditions are met: (1) the vehicle must be owned by an insured; and (2) the vehicle must be on an insured location. Because it cannot reasonably be disputed that the vehicle must be owned by the insured at the time of the accident giving rise to the claim for this exception to apply, in the absence of some textual basis to distinguish temporally between these essential facts, it seems self-evident that the vehicle also must be on an insured location at this same point in time.
Our determination that coverage depends on the location of the ATV at the time of the accident is also in keeping with this court's focus on the location of the accident in determining whether a claim is governed by other location based coverage provisions involving motor vehicles. As the court held in LaBonte v. Federal Mutual Ins. Co., 159 Conn. 252, 257, 268 A.2d 663 (1970), "an obvious purpose of the exclusion clause [applying to automobiles off the premises or the ways immediately adjoining] was to limit the territorial scope of the ... liability coverage in cases involving automobiles. ... That clause provides, in effect, that any liability, under any theory of recovery, whether personal negligence, master-servant, agency, or other theory of vicarious liability, which arises from an automobile accident off the premises, is outside the scope of the contract." (Citation omitted; internal quotation marks omitted.) As was the case in LaBonte, the homeowner's policy in the present case provides coverage against accidentsnot theories of liabilities.[4] Cf. Iorio v. Simone, 340 N.J.Super. 19, 23, 773 A.2d 722 (2001) ("[t]he occurrence which triggers the liability coverage is an accident which results in a bodily injury claim, not a particular type of careless conduct by the insured"); Bankert v. Threshermen's Mutual Ins. Co., 110 Wis.2d 469, 480, 329 N.W.2d 150 (1983) ("An occurrence is defined as an accident. This is what is insured againstnot theories of liability."). Coverage must therefore be assessed at the time of the accident.

B
Having determined that the ATV must be "on an [i]nsured location" at the time of *720 the accident for coverage to apply, we now turn to the second certified question, which concerns whether the site of the accident in this casea dead-end private road within a residential development owned by the homeowners association of which the Kings are membersis such an "[i]nsured location." In certifying this question to us, the Second Circuit observed that only one policy definition of the term insured location arguably applies to this site"[a]ny premises used by you in connection with [the residence premises]"[5] and that the policy does not further define "premises." Arrowood Indemnity Co. v. King, supra, 605 F.3d at 76. In addition to raising the question of whether a private road may ever qualify as "premises," the Second Circuit noted that no Connecticut court has interpreted the phrase "[a]ny premises used by you in connection with [the residence] premises" and that courts in other jurisdictions have adopted divergent criteriaincluding "repeated use,"[6] "integral use,"[7] "property ownership and legal right to use,"[8] "foreseeable use"[9] and "actual use"[10]  to determine whether a location is used in connection *721 with the residence premises. Id., at 72-75. We conclude that, although the precise meaning of the phrase "[a]ny premises used by you in connection with [the residence] premises" is uncertain, the broader meaning of the essential term that this phrase helps to define"[i]nsured location"is sufficiently clear to exclude the private road at issue in the present case.
As a threshold matter, we note that the mere fact that the accident site was a private road would not per se exclude it from qualifying as a "premises." The Kings' warranty deed indicates that the premises they own extends "to the center line of a private road known as Deer Park Court. ..." It is thus clear from this deed that segments of private roads within Deer Park are not excluded from the definition of "premises" simply because they are also "roads."[11]
We turn next to the question of whether the dead-end road where the accident occurred was "used ... in connection with [the residence] premises" as provided in the policy. The varied judicial glosses identified by the Second Circuit highlight the fact that this phrase, taken in isolation, is susceptible to a variety of tenable constructions. We have noted, however, that "[w]hen interpreting [an insurance policy], we must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result." (Internal quotation marks omitted.) Johnson v. Connecticut Ins. Guaranty Assn., supra, 302 Conn. at 643, 31 A.3d 1004. Thus we need not decide whether to follow other courts in applying a judicial gloss to the phrase "used ... in connection with [the residence] premises" if we can discern whether "[i]nsured location," the operative term defined by this phrase, encompasses the private road at issue.[12]
The term insured location appears in several related provisions of the insurance contract that, along with the ATV exception at issue, address the scope of liability coverage under the policy. Most notably, as part of its liability coverage, *722 the insurer pledges to pay certain medical expenses for injuries sustained by nonresidents of the insured household. The coverage applies: "1. To a person on the Insured location with the permission of an Insured; or
"2. To a person off the Insured location, if the bodily injury:
"a. Arises out of a condition on the Insured location or the ways immediately adjoining;
"b. Is caused by the activities of an Insured;
"c. Is caused by a residence employee in the course of the residence employee's employment by an Insured; or
"d. Is caused by an animal owned by or in the care of an Insured."
Although we cannot glean a precise meaning of insured location from this provision, it does narrow the scope of the term in two important respects. First, coverage is afforded to "a person on the Insured location with the permission of an Insured. ..." (Emphasis added.) This language implies that the insured must have a sufficient legal interest in the insured location such that the insured has the right to grant permission to a noninsured to enter that location. From this we infer that "[i]nsured location" plainly may not be construed so broadly as to include public spaces, access to which cannot be contingent on the permission of any individual property owner. Similarly, the insured location may not be premises over which some party other than the insured exercises exclusive control and that the insured cannot rightfully access or permit another to access. Another person's private property, that is to say, cannot reasonably be construed as an insured location simply because an insured sanctions a trespass by giving a third party "permission" to access those premises.
Second, the policy provides medical coverage for all invitees injured "on the Insured location," regardless of whether the injury relates to the insured's own activities or property maintenance. By contrast, the policy only provides for medical care of third parties injured "off of the Insured location" if there are specified reasons to charge the insured with responsibility for the injury. From this distinction we draw the ready inference that the insured necessarily carries a heightened level of responsibility for the insured location relative to other locations, such that a third party invitee injured on the insured location might reasonably look to the insured for payment of medical expenses simply because of where the injury occurred. This further demonstrates that the term insured location is not intended to include public spaces or property over which the insured exercises no control or for which the insured bears no particularized responsibility.
Turning to the location of the accident in the present case, the record does not show that the Kings had a cognizable interest in the dead-end portion of Midwood Road that would place the accident site within the scope of "an [i]nsured location." According to the Second Circuit's decision, the homeowners association, which is incorporated, owns this road. Nothing in the record demonstrates that the Kings' ownership of the residence premises conferred to them authority over this stretch of road; nor do we see any indication that the Kings bore a heightened level of personal responsibility for the location. Their warranty deed specifically confers "the right to use in common with others to whom the right has been or may hereafter be granted, for all purposes of travel, the private roads leading from the premises to and from the public highway insofar as the same may be necessary or convenient in *723 passing to and from the premises. ..." (Emphasis added.) It is clear, however, that the location of the accidenta stretch of dead-end roaddoes not lead from the residence to any public road, and the right to use this road is therefore not explicitly conveyed in the deed. The text of the warranty deed, moreover, is not amenable to a more expansive reading of the Kings' easement beyond this express conveyance. The deed affords them the right to use the private roads of Deer Park only "insofar as the same may be necessary or convenient in passing to and from the premises ... [to the public road]." Accordingly, it is clear that the easement has purposefully limited both the nature and the scope of the rights it creates. The resulting circumscribed right of passage leaves the lion's share of rights and concomitant duties, even along the roads reasonably leading to the public way, to that road's actual ownerwhether it be another homeowner (who like the Kings was deeded a portion of the road) or the homeowners association generally.[13] We therefore conclude that the limited easement expressed in the Kings' warranty deed does not give them a sufficient interest in the accident site, a dead-end stretch of road beyond the scope of that easement, to render it an insured location. Under the terms of the insurance contract at issue in this case, the accident site therefore is not covered.

*724 II
Although we have determined that the accident in this case was not covered by the Kings' homeowners insurance policy, the Second Circuit has indicated that our answers to the first two certified questions may not be dispositive of the entire appeal. See footnote 1 of this opinion. We therefore turn to the third certified question, which concerns the affirmative defense of untimely notice, that the District Court did not reach. As the Second Circuit noted, "Connecticut requires two conditions to be satisfied before an insurer's duties can be discharged pursuant to the `notice' provision of a policy: (1) an unexcused, unreasonable delay in notification by the insured; and (2) resulting material prejudice to the insurer. The burden of establishing timely notice or lack of prejudice to the insurer rests with the insured." Arrowood Indemnity Co. v. King, supra, 605 F.3d at 77. The certified question specifically addresses the first of these conditions; however, because both conditions may be relevant to the Circuit Court's disposition, we will address each in turn.

A
The third certified question asks whether "social interactions between the insured and the claimant making no reference to an accident claim justify a delay in giving notice of a potential claim to the insurer. ..." Id., at 80. In certifying this question to us, the Second Circuit observed: "We find that it is unclear under Connecticut law whether the Kings' reliance on social interaction is enough to create a material issue of fact as to whether, prior to their receipt of the letter from the McEntees' counsel, the situation would have `suggest[ed] to a person of ordinary and reasonable prudence that liability may have been incurred.'" Id., at 78. We hold that the severity and circumstances of the injury in this case were such that a reasonable person would have known that "liability may have been incurred" and that social interactions following the injury, in which the victim in no way disclaimed the possibility of bringing an action, did not bear on the Kings' obligation to give notice within a reasonable time following the accident.
The notice provision at issue provides that "[i]n the case of an accident or occurrence," the insured has a duty to "[g]ive written notice to us or our agent as soon as practical. ..." As this court has long recognized, in the context of notice provisions, "as soon as practicable" means "as soon as can reasonably be expected under the circumstances. ... The duty to give notice does not arise unless and until facts develop which would suggest to a person of ordinary and reasonable prudence that liability may have been incurred, and is complied with if notice is given within a reasonable time after the situation so assumes an aspect suggestive of a possible claim for damages."[14] (Internal quotation marks omitted.) Plasticrete Corp. v. American Policyholders Ins. Co., 184 Conn. 231, 241, 439 A.2d 968 (1981).
Turning to the facts of the present case, it is clear that the Kings had an obligation to give notice following the ATV accident. As a result of this accident, the injured child suffered a severe head *725 injury leading to hospitalization and a temporary coma; the accident, moreover, was to all appearances causally connected to Pendleton, Jr.'s use of an ATV entrusted to him by his parents. These facts would have led a reasonable person to believe that "liability may have been incurred" and thus gave rise to a duty to give notice. Although "the duty to give notice does not attach in the case of a trivial accident where there is no reasonable ground for believing at the time that it involves any injury insured against"; Baker v. Metropolitan Casualty Ins. Co., 118 Conn. 147, 150, 171 A. 7 (1934); this court has long recognized that "[i]njury, however slight, received from an accident within the coverage of a liability policy may, and experience indicates, probably will, result in a claim for damages. ..." Id., at 152, 171 A. 7; see id., at 153-54, 171 A. 7 (reasonableness of delayed disclosure is question of fact when child struck by car displayed no injuries and child's mother informed driver that child was not injured). In the present case, the injury was far from slight and was unmistakably apparent.
Notwithstanding the severe nature of this accident, the Kings suggest that no notice was required prior to their having been contacted by an attorney representing the McEntee family approximately one year after the accident because, subsequent to the accident, they had socialized with the child and his family and these interactions did not create the impression that an action would be brought.[15] The Kings' argument fails to recognize that the notice requirement turns not on an insured's subjective assessment of how likely a claim is to be brought, but rather on whether a reasonable person would recognize that "liability may have been incurred"; Plasticrete Corp. v. American Policyholders Ins. Co., supra, 184 Conn. at 241, 439 A.2d 968; and "the situation so assumes an aspect suggestive of a possible claim for damages." Id. There is no indication that through these social interactions the victim assumed total liability or otherwise disclaimed ability to bring a claim. Although the social interaction may have made a claim seem less likely, it did not defeat the reasonable conclusion that liability may have been incurred or that a claim for damages could possibly arise from the accident. Therefore, the social interaction between the Kings and the McEntees would not justify a delay in giving notice of a potential claim.

B
If notice was untimely, a further determination of whether the insurers were prejudiced by the late notice will be necessary. Although a determination of whether prejudice occurred in the present case is beyond the scope of the certified question, we take this opportunity to revisit the allocation of the burden of proof under Connecticut law. In so doing, we overrule Aetna Casualty & Surety Co. v. Murphy, 206 Conn. 409, 538 A.2d 219 (1988), to the extent that it allocated the burden to the insured to disprove prejudice, and we hold that the insurer bears the burden of proving, by a preponderance of evidence, that it has been prejudiced by *726 the insured's failure to comply with a notice provision.
In reaching this decision, we begin by reviewing the development of the role of prejudice in notice provisions under Connecticut law. Historically, "absent waiver, an unexcused, unreasonable delay in notification constitute[d] a failure of condition that entirely discharge[d] an insurance carrier from any further liability on its insurance contract. ... That rule was based on the basic principle that contracts should be enforced as written, and that contracting parties are bound by the contractual provisions to which they have given their assent. ...
"In Murphy, we recognized that rigid application of the general rule discharging an insurer's liability when an insured has failed to comply with the notice provisions of the policy, without any initial inquiry into whether the insurer was prejudiced by the timing of the notice, would likely yield a disproportionate forfeiture. ... Although we noted that most jurisdictions placed the burden upon an insurer to show prejudice before being discharged from liability due to an insured's late notice, we opted instead to place the burden on the insured to show that the insurer had not been prejudiced by the timing of the notice. ... In arriving at this rule, we balanced the competing principles of protecting an insured from disproportionate forfeiture and safeguarding an insurer's legitimate interest in protection from stale claims." (Citations omitted; internal quotation marks omitted.) National Publishing Co. v. Hartford Fire Ins. Co., 287 Conn. 664, 674-75, 949 A.2d 1203 (2008).
The burden allocation adopted in Murphy proceeded from the court's fundamental recognition that "a proper balance between the interests of the insurer and the insured requires a factual inquiry into whether, in the circumstances of a particular case, an insurer has been prejudiced by its insured's delay in giving notice of an event triggering insurance coverage. ... Literal enforcement of notice provisions when there is no prejudice is no more appropriate than literal enforcement of liquidated damages clauses when there are no damages." Aetna Casualty & Surety Co. v. Murphy, supra, 206 Conn. at 417-18, 538 A.2d 219.
Although Murphy noted that a majority of other jurisdictions balance the interests of insurers and insureds by requiring the insurer to demonstrate prejudice, this court chose instead to require the insured to demonstrate lack of prejudice. Id., at 418-19, 538 A.2d 219. The court reasoned that this burden allocation was appropriate because "[i]t is the insured who is seeking to be excused from the consequences of a contract provision with which he has concededly failed to comply. ... The determination of what is fair, as a factual matter, must ... depend upon a proper showing by the [party] who seeks this extraordinary relief." Id., at 419-20, 538 A.2d 219.
We now conclude that this reasoning, while legally tenable, is not as consistent with the principles we articulated previously herein as the contrary rule. As we recognized in Murphy, the task of proving a negative is an inherently difficult one, and it may be further complicated by the opposing party's interest in concealment. Id., at 420, 538 A.2d 219. Imposing this difficult task on the insuredthe party least well equipped to know, let alone demonstrate, the effect of delayed disclosure on the investigatory and legal defense capabilities of the insurerreduces the likelihood that the fact finder will possess sufficient information to determine whether prejudice has resulted from delayed disclosure. This uncertainty, which may prevent the court from meaningfully weighing the parties' real interests, compromises *727 the principled balance that this court intended to strike in Murphy. To better achieve that balance, we now join the overwhelming majority of our sister states in adopting a rule that facilitates informed determinations of prejudice by incentivizing insurers to bring evidence of prejudice, should it exist, to the court's attention.[16]
The answer to the first certified question is that the relevant location is the site of the accident; the answer to the second certified question is no, the private road in this case does not fall under the coverage provision; and the answer to the third certified question is no, social interactions unrelated to litigation do not justify delayed notice, but the insurer bears the burden of proving prejudice from late notice.
No costs shall be taxed in this court to either party.
In this opinion the other justices concurred.
NOTES
[1] At the time of the accident at issue, the Kings were covered by three insurance contracts, each of which was obtained through the New England Brokerage Corporation: a homeowners insurance policy issued by Royal Indemnity Company; an umbrella insurance policy issued by Royal Insurance Company of America; and an excess liability insurance policy that followed form to the homeowners and umbrella policies issued by National Surety Corporation. Royal Indemnity Company and Royal Insurance Company of America originally brought the declaratory action in the federal District Court against the Kings, and, thereafter, the Kings asserted counterclaims against both of those insurers and filed a third party complaint against National Surety Corporation and New England Brokerage Corporation. Each of the parties filed motions for summary judgment, and the District Court ruled in favor of the insurance companies on all five motions. During the course of litigation, Arrowood Indemnity Company was substituted as the plaintiff for Royal Indemnity Company and Royal Insurance Company of America, and the Second Circuit thereafter granted a motion by Royal Indemnity Company and Royal Insurance Company of America to amend the caption of the complaint to reflect that substitution. Because the certified questions refer only to the terms of the homeowners insurance policy, except where noted, we direct our attention exclusively to that contract and refer to Arrowood Indemnity Company as the plaintiff.
[2] See Pister v. Nationwide Mutual Ins. Co., Superior Court, judicial district of Danbury, Docket No. DBD-CV-06-4005239 (April 13, 2007) (determining that exclusion for bodily injury arising out of use of ATV "while off an insured location"; [emphasis added; internal quotation marks omitted]; applied to accident alleged to have occurred on land owned by third party, with no reference to location where ATV was garaged); Chen v. Celon, Superior Court, judicial district of Fairfield, Docket No. CV-02-0391304-S, 2006 WL 3008410 (October 10, 2006) (42 Conn. L. Rptr. 147, 149) (holding that "the phrase `on an insured location,' while ambiguous, refers to the physical location where the motorized vehicle designed for use off public road is garaged or housed").
[3] The Kings rely heavily on a Superior Court opinion interpreting the same "on an insured location" language, which reasoned: "This debate would have been easily resolved had [the insurer] specified in its policy that the phrase refers to a vehicle `garaged' on an insured location, or `entrusted' to someone while on an insured location, or `used' on an insured location. Unfortunately, an examination of the policy does not supply the needed clarification. Therefore, in the absence of specific policy language, the court will not infer that the exclusion is applicable. ... It is found that the phrase `on an insured location,' while ambiguous, refers to the physical location where the motorized vehicle designed for use off public road is garaged or housed." Chen v. Celon, supra, Superior Court, Docket No. CV-02-0391304-S. Because we disagree that this phrase is ambiguous when viewing the contract as a whole, we decline to adopt the reasoning of Chen. "We recognize that this policy language could have been, and perhaps should have been, more artfully and, thus, more clearly drafted. But [the insurer's] failure to state the exclusion in the clearest language possible does not render the language used `ambiguous.'" Allstate Ins. Co. v. Shofner, 573 So.2d 47, 49 (Fla.App. 1990).
[4] The alternate construction of the provision as applying to ATVs so long as they are on an insured location at the time of the negligent entrustment cannot be reconciled with this long-standing recognition that the underlying purpose of liability insurance is to provide coverage based on accidents. Specifically, this construction fails to account for the inherently derivative nature of negligent entrustment liability. Although the act of entrustment may be negligent (and hence a potential basis of liability), the act of entrusting an ATV is not a direct source of potential accidents and injury; rather, it is the subsequent use of the entrusted ATV that may result in an injurious accident for which the entrusting party can be held responsible. Greeley v. Cunningham, 116 Conn. 515, 520, 165 A. 678 (1933) ("[w]hen the evidence proves that the owner of an automobile knows or ought reasonably to know that one to whom he [e]ntrusts it is so incompetent to operate it upon the highways that the former ought reasonably to anticipate the likelihood of injury to others by reason of that incompetence, and such incompetence does result in such injury, a basis of recovery by the person injured is established"). Although the policy does not categorically exclude from coverage claims based on negligent entrustment, the existence of such vicarious liability cannot alone dictate whether a given accident falls within the sphere of coverage. As the court recognized in Greeley, there is an inherent gap between the act of negligent entrustment and the ultimate accident such that the conditions that existed at the time of entrustment (for example, the vehicle being on an insured location) have little bearing on the conditions that pertain to the actual accident in relation to which coverage is claimed. Id.
[5] The definition, or glossary, section of the policy provides: "`Insured Location' means:

"a. The residence premises.
"b. The part of other premises, other structures and grounds used by you as a residence and:
"(1) Which is shown on your Declarations; or
"(2) Which is acquired by you during the policy period for your use as a residence.
"c. Any premises used by you in connection with a premises in 8.a. or 8.b. above.
"d. Any part of a premises:
"(1) Not owned by an Insured; and
"(2) Where an Insured is temporarily residing;
"e. Vacant land, other than farm land, owned by or rented to an Insured.
"f. Land owned by or rented to an Insured on which a one or two family dwelling is being built as a residence for an Insured.
"g. Individual or family cemetery plots or burial vaults of an Insured; or
"h. Any part of a premises occasionally rented to an Insured for other than business use."
[6] Arrowood Indemnity Co. v. King, supra, 605 F.3d at 72, quoting Allstate Ins. Co. v. Drumheller, 185 Fed.Appx. 152, 158 (3d Cir.2006) ("[W]e do not believe that the precise physical relationship of [the residence premises to the accident site] is the crucial inquiry. ... We think that the Pennsylvania Supreme Court would follow [the] holding that in connection with means the repeated use of the ATV emanating from and returning to the insured's residence." [Internal quotation marks omitted.]).
[7] Arrowood Indemnity Co. v. King, supra, 605 F.3d at 73, quoting Massachusetts Property Ins. Underwriting Assn. v. Wynn, 60 Mass.App. 824, 830, 806 N.E.2d 447 (2004) ("the term insured location is intended and appropriately understood to be limited to the residence and premises integral to its use as a residence" [internal quotation marks omitted]).
[8] Arrowood Indemnity Co. v. King, supra, 605 F.3d at 74, quoting Uguccioni v. United States Fidelity & Guaranty Co., 408 Pa.Super. 511, 513, 597 A.2d 149 (1991) ("[T]hese streets, it would seem, are private property used by the insureds in connection with their insured residence. As such, the street on which [the ATV accident occurred] was an insured location." [Internal quotation marks omitted.]).
[9] Arrowood Indemnity Co. v. King, supra, 605 F.3d at 74, quoting Utica Mutual Ins. Co. v. Fontneau, 70 Mass.App. 553, 559, 875 N.E.2d 508 (2007) ("[t]o determine whether a site is covered by reason of its use in connection with the specifically insured residential premises, courts will examine [1] the character of the use as a residentially related activity; [2] the distance between the residence and the site; and [3] the resulting reasonable foreseeability of the risk of the connected activity on the site to the insurer" [internal quotation marks omitted]).
[10] Arrowood Indemnity Co. v. King, supra, 605 F.3d at 75, citing Royal Indemnity Co. v. King, supra, 512 F. Sup.2d at 127 (actual use is prerequisite to satisfying homeowner's policy clause that requires use of piece of property in connection with residence premises).
[11] According to Black's Law Dictionary (9th Ed. 2009), "premises" may be defined as "[a] house or building, along with its grounds. ..." The dictionary further notes, quoting from B. Gardner, A Dictionary of Modern Legal Usage (2d Ed. 1995), that this definition "has a curious history in legal usage. Originally, in the sense of things mentioned previously, it denoted the part of a deed that sets forth the names of the grantor and grantee, as well as the things granted and the consideration. Then, through hypallage in the early [eighteenth] century, it was extended to refer to the subject of a conveyance or bequest as specified in the premises of the deed. Finally, it was extended to refer to a house or building along with its grounds." (Internal quotation marks omitted.) Black's Law Dictionary, supra. As the Kings' warranty deed demonstrates, a private road in Deer Park may be the subject of a conveyance conferred by deed and thus may qualify as premises.
[12] As reflected in the policy provision cited in footnote 5 of this opinion, "used ... in connection with [the residence premises]" represents one of several definitions of the term "insured location." By virtue of this relationship, if a location qualifies as a "premises used by you in connection with [the residence premises]" then that location is by definition an "insured location." This relationship also necessarily indicates that if a location is not an "insured location" it is not a "premises used by you in connection with [the residence premises]. ..." Our inquiry therefore turns to the scope of the term "insured location" as used in the policy, with the understanding that if the location of the accident necessarily falls outside the scope of this term then coverage is precluded, both because that location cannot be a "premises used by you in connection with [the residence premises]" and, more directly, because coverage applies to ATVs owned by an insured only when they are also "on an insured location. ..."
[13] We note that there seems to be some uncertainty in the record regarding the homeowners association's proprietary interest in the roads of Deer Park and the nature of the rights created by the Kings' membership in that association. The District Court noted with respect to this issue: "The parties dispute whether the Kings actually had the legal right to use North Midwood Road under their association contract because the Kings do not use that portion of the road for ingress or egress. I need not resolve that issue." Royal Indemnity Co. v. King, supra, 512 F. Sup.2d at 125 n. 8. The Second Circuit subsequently characterized the location as "a private road in which the [Kings] had a property interest derivative of their ownership of the insured residence premises"; Arrowood Indemnity Co. v. King, supra, 605 F.3d at 71; but it left open the question of "whether merely showing the existence of a property right in the accident situs is sufficient to secure policy coverage as an `insured location,' or whether the `legal right' must be further conditioned on it being a right for purposes only of assuring access to the residence premises. ..." Id., at 74. We conclude that, under this insurance contract, a property interest that cannot reasonably be construed to confer the level of rights and responsibilities discussed in the "medical payments" provision of the policy would not be sufficient to qualify a given site as an insured location. Whatever derivative property interest the Kings may have in the private roads of Deer Park as a result of their membership in the homeowners association, that interest, precisely because it is mediated through the association and does not arise directly from the residence premises itself (unlike the rights outlined in the warranty deed), cannot reasonably be read to trigger this heightened level of personal rights and responsibilities. We therefore disagree with Uguccioni v. United States Fidelity & Guaranty Co., 408 Pa.Super. 511, 514, 597 A.2d 149 (1991), insofar as the court in that case concluded that a private road in an insured's residence community is necessarily an "insured location."

In further support of this conclusion, we note that, where the insurance contract at issue in the present case extends coverage to locations in a private residence community that are beyond the "insured location," it has done so explicitly. The policy contains a provision similar to the ATV provision that extends coverage to "[a] motorized golf cart while: (a) [b]eing used to play golf on a golf course; (b) [o]n an Insured location; or (c) [o]ff an Insured location; but within the confines of a residential park, planned community or similar limited access living community that contains the Insured location." This provision makes clear both that the parties contemplated that the site of an accident may be "[o]ff an Insured location" while also being "within the confines of a ... planned community" and that, being aware of this scenario, the parties explicitly extended coverage to the entire community where they intended coverage so to extend.
[14] Although the notice provision contained in the excess liability insurance policy issued by National Surety Corporation; see footnote 1 of this opinion; requires the insurer to be notified "promptly," like the phrase "as soon as practical," the term promptly is construed to require reasonably timely notice. Baker v. Metropolitan Casualty Ins. Co., 118 Conn. 147, 149, 171 A. 7(1934).
[15] The Kings also assert that because the homeowner's insurance policy includes an instruction to give notice of "[n]ames and addresses of any claimants and witnesses," the Kings had no obligation to give notice in the absence of a "claimant." This argument plainly lacks merit. Connecticut law makes clear that the duty to give notice arises when "liability may have been incurred"; in this context the term claimant reasonably refers to those to whom the insured may be liable, regardless of whether a claim has yet been brought.
[16] At the time Murphy was decided, the court identified eighteen jurisdictions that placed the burden of showing prejudice on the insurer, five jurisdictions that placed the burden on the insured and seven jurisdictions that strictly construed the notice requirement irrespective of prejudice. Aetna Casualty & Surety Co. v. Murphy, supra, 206 Conn. at 418-19, 538 A.2d 219. Since this court decided Murphy, at least one of the five jurisdictions placing the burden on the insured has shifted the burden to the insurer, employing much the same reasoning we adopt today. Dover Mills Partnership v. Commercial Union Ins. Cos., 144 N.H. 336, 339, 740 A.2d 1064 (1999) ("It is appropriate to impose the burden on the insurance carrier to prove prejudice because the insurer is in the best position to establish facts demonstrating that prejudice exists. Moreover, to hold otherwise would require an insured to prove a negative, a nearly impossible task."). Of the seven jurisdictions that strictly construed the notice requirement according to Murphy, five now require the insurer to demonstrate prejudice. Progressive Specialty Ins. Co. v. Steele, 985 So.2d 932, 940 (Ala.Civ.App.2007) ("[i]f the insurer fails to present evidence as to prejudice, then the insured's failure to give notice will not be a bar to his recovery"); Friedland v. Travelers Indemnity Co., 105 P.3d 639, 648 (Colo.2005) ("in cases where an insurer has received unreasonably delayed notice of the suit but such notice came prior to the suit's disposition, there should be no presumption of prejudice and the insurer is required to prove prejudice"); Government Employees Ins. Co. v. Harvey, 278 Md. 548, 551-52, 366 A.2d 13 (1976) (statute permits disclaimer of coverage based on inadequate notice only if insurer "establishes, by a preponderance of affirmative evidence that such lack of cooperation or notice has resulted in actual prejudice"); Ponok Realty Corp. v. United National Specialty Ins. Co., 69 App.Div.3d 596, 893 N.Y.S.2d 125 (2010) (noting that 2008 legislation "provides that where an insurer alleges that it was prejudiced as a result of a failure to provide timely notice, the burden shall be on ... the insurer to prove that it has been prejudiced if the notice was provided within two years of the time required under the policy" [internal quotation marks omitted] ); State Farm Mutual Automobile Ins. Co. v. Porter, 221 Va. 592, 599, 272 S.E.2d 196 (1980) (noting that insurer bears "burden of showing that the insured's violation, failure to give prompt notice of suit, was of such substantial and material nature as to justify the voiding of the insurance contract" [internal quotation marks omitted]).